956 So.2d 121 (2007)
Dorsheka BAKER, Linda Mitchell, Beverly Winzer and the Concerned Citizens of Bonita, Plaintiff-Appellant
v.
MOREHOUSE PARISH SCHOOL BOARD, Defendant-Appellee.
Janice Dukes, Tijuanna Bonner-Ford, Gale Palm, James Lee, and Concerned Parents of East Morehouse, Plaintiff-Appellant
v.
Morehouse Parish School Board, et al., Defendant-Appellee.
Nos. 41,874-CA, 41,875-CA.
Court of Appeal of Louisiana, Second Circuit.
April 25, 2007.
*122 Carol Denise Powell Lexing, Monroe, for Appellants, Dorsheka Baker, Linda Mitchell, Beverly Winzer, and The Concerned Citizens of Bonita.
Louis Granderson Scott, for Appellants, Janice Dukes, Tijuanna Bonner-Ford, Gale Palm, James Lee, and Concerned Parents of Morehouse Parish.
Rankin, Yeldell & Katz, by Stephen J. Katz, for Appellee, Morehouse Parish School Board, et al.
Before DREW, MOORE and SEXTON (Pro Tempore), JJ.
DREW, J.
In these consolidated actions, plaintiffs appeal a judgment granting various exceptions and dismissing their claims. We reverse the judgment in part and affirm the judgment in part, and remand.

FACTS
Bonita Elementary School, Collinston Elementary School, and Delta High School were in the Delta Attendance Zone of Morehouse Parish. The Delta Attendance Zone is located in the eastern area of the parish. These three schools are also located in a special taxing district, the East Morehouse School District ("EMSD").
On May 5, 2001, voters in the EMSD passed a five-year 10 mill property tax and a 1/2% sales and use tax. Both taxes were for the purpose of "providing additional support for constructing, improving, maintaining, and operating public schools for the District, including salaries and benefits of teachers and employees."
*123 On April 2, 2005, voters in the EMSD approved a nine-year 9.95 mill property tax for the purpose of "providing additional support for constructing, improving, maintaining, and operating public schools for the District, including salaries and benefits of teachers and employees."
In February of 2006, because of significant budget problems, the Morehouse Parish School Board ("MPSB") voted to take some very controversial steps concerning the EMSD schools. Bonita Elementary and Collinston Elementary were closed. Delta High's students were transferred to Bastrop High School. Delta High was renamed Delta Junior High, and students from Bonita and Collinston were sent there.
Understandably, many parents of affected students and others impacted by the MPSB's decision were not pleased, especially since there were concerns about the use of revenue collected through the special taxes in the EMSD. The August 2005 Legislative Auditor Report of the MPSB stated that in October of 2004, approximately $1,554,000 in funds from a capital improvements bond issue and $50,000 in ad valorem taxes collected for the EMSD were spent for other purposes.[1] The Report further stated that as of June 30, 2005, the majority of the funds had been transferred to the proper accounts.
"Baker" Lawsuit
On March 24, 2006, Dorsheka Baker, Linda Mitchell, Beverly Winzer, and the Concerned Citizens Organization of Bonita filed suit against the MPSB. In their petition for declaratory relief, the plaintiffs alleged that the MPSB had not acted as a prudent administrator in dealing with tax revenues, that money raised through the special taxes had been spent for purposes other than their dedicated uses, and that the MPSB acted fraudulently, arbitrarily, and unreasonably in inducing support for the special taxes on the premise that the taxes were necessary to keep the schools open.
Petitioners prayed that the court: (i) prevent the MPSB from closing Bonita Elementary and consolidating schools in the EMSD; (ii) declare that the MPSB failed to use the tax revenues for the intended purpose of preventing the closing or consolidation of schools, or in the alternative, declare the special taxes null and void; and (iii) order the production of documents.
The documents requested were school board minutes from January 1, 2005, to March 24, 2006; correspondence with the U.S. Justice Department regarding the closure and consolidation of the EMSD schools; and orders and approvals from the Justice Department preclearing the closing or consolidation of those schools.
In response to the petition, the MPSB filed numerous exceptions, including the exceptions of no cause of action, prescription, peremption, and lack of subject matter jurisdiction.
"Dukes" Lawsuit
On April 5, 2006, Janice Dukes, Tijuanna Bonner-Ford, Gale Palm, James Lee, and Concerned Parents of East Morehouse filed a petition for declaratory judgment and writ of mandamus against the MPSB and five of its members. They alleged that the MPSB had made assurances that Delta High would remain open if the special taxes passed; that the MPSB had acted arbitrarily, fraudulently, and unreasonably in collecting and spending the special tax funds; that the MPSB spent revenues raised from the taxes on projects at *124 schools outside the EMSD, while failing to use the revenues for the purposes intended by the taxes; that for at least the first two years of the taxes, proceeds from the taxes were deposited in the general fund rather than in an account designated for the EMSD; and that the tax propositions envisioned at least two schools being maintained in the EMSD.
Petitioners prayed that the trial court declare that: (i) closing and consolidating the schools was arbitrary, fraudulent, and illegal; (ii) they were entitled to examine and copy all documents indicating the funds collected by the EMSD, where those funds were deposited, and where those funds were spent; (iii) the EMSD violated La. R.S. 39:704 by using its money for purposes other than those for which the special taxes were collected; (iv) the ordinance adopted in 2001 to impose a sales and use tax was null, void, and unenforceable because it was obtained through fraud and misrepresentation; (v) removing items such as computers, desks, books, lab equipment, chairs and tables would not be allowed because the removal would be a violation of La. R.S. 39:704; (vi) the tax passed on April 2, 2005, required that at least two schools be maintained and operated within the EMSD; and (vii) the MPSB used fraudulent means and deceptive practices to trick voters into supporting the special taxes.
The plaintiffs also sought a writ of mandamus compelling the MPSB to keep Delta High open during the existence of the nine-year 9.95 mill property tax, and ordering the MPSB to account for all money collected in the EMSD since May of 2001 and to place in the EMSD account all money collected in the EMSD but placed into other accounts or spent outside the EMSD.
Defendants responded with various exceptions, including the exceptions of improper cumulation of actions, improper use of summary proceedings, no cause of action, no right of action, lack of subject matter jurisdiction, and mootness.
Federal Court Action
On April 19, 2006, the U.S. District Court for the Western District of Louisiana entered an order that approved the decision by the MPSB to consolidate and close schools and to reassign students in the Delta Attendance Zone beginning with the 2006-2007 school year. Students in grades 9 through 12 who had attended Delta High were to attend Bastrop High. Delta High was to be renamed Delta Junior High. Bonita Elementary and Collinston Elementary were to be closed, and all students in grades K through 8 in the Delta Attendance Zone were to attend Delta Junior High.
Consolidation and Hearing on Exceptions
On May 25, 2006, the two lawsuits were consolidated and the trial court conducted a hearing on the exceptions. As noted in a judgment signed on June 12, 2006, the court granted the exceptions of lack of subject matter jurisdiction, mootness, no cause of action, prescription, and peremption. The claims were dismissed. Plaintiffs appealed.

DISCUSSION
The issues on appeal can be broken down into two components.[2] The first concerns the plaintiffs' efforts to thwart the closing and consolidation of schools in the EMSD. The second concerns the plaintiffs' *125 complaints about the spending of revenue generated by the special taxes in the EMSD.
Closing/Consolidation Issues
Once the federal court approved the closing and consolidation of EMSD schools, any issues related to this became moot and the trial court lacked subject matter jurisdiction to stop the school closings or consolidations. In Bonner v. Morehouse Parish School Bd., 366 So.2d 588 (La.App. 2d Cir.1978), writ denied, 367 So.2d 379 (La.1979), the petitioners sought an injunction requiring the school board and its superintendent to allow the transfer of students to schools in a neighboring parish. The federal district court had earlier ruled that such transfer requests were to be presented to it for a determination of whether or not the transfer was to be allowed. The state district court sustained the defendants' exception of lack of subject matter jurisdiction based upon preemption by the federal court. In affirming the judgment, this court remarked:
The U.S. District Court's judgment relied upon by the trial judge is supreme over and superior to any judgment that the state court might render detracting from or interfering with the U.S. Court decree. The state court had no power to issue an injunction ordering the school board or its superintendent to violate the U.S. Court decree.
Id., 366 So.2d at 592-3.
The federal district court has already approved the school board's actions in closing and consolidating the EMSD schools. Allowing plaintiffs to now undo the MPSB's decision, and hence, accomplish judicially what they could not do politically, would run afoul of the federal court decree. Accordingly, the exceptions of mootness and lack of subject matter jurisdiction were properly sustained against all claims related to the closing and consolidation of EMSD schools. Included among these claims are the Baker plaintiffs' request for production of documents, the declaratory judgment sought by the Dukes plaintiffs that the April 2005 tax proposal required more than one school to remain open, and the declaratory judgment sought by the Dukes plaintiffs prohibiting the removal of classroom equipment.[3]
We further note that it is ordinarily within the discretion of a school board to determine which schools that it wishes to operate. See La. R.S. 17:151(A), which states, "Parish and city school boards may establish such public schools as they may deem necessary to provide adequate school facilities for the children of the parish. . . ." See also La. R.S. 17:81(A)(1), which provides, "Each city and parish school board shall determine the number of schools to be opened, the location of school houses. . . ."
Tax-Related Issues
The Dukes plaintiffs sought a declaratory judgment that they were entitled to examine and copy all documents indicating the funds collected by the EMSD, where those funds were deposited, and where those funds were spent.
The right of the public to obtain access to various public records is set forth in La. Const. Art. 12, § 3. This right is implemented in La. R.S. 44:1, et seq. When a person has been denied this right, he may institute proceedings for the issuance of a *126 writ of mandamus, injunctive or declaratory relief. See La. R.S. 44:35. It is unclear whether plaintiffs in this instance had actually made a request to examine these public records, and that this request had been denied. As such, the Dukes plaintiffs lack a cause of action for a declaratory judgment of their entitlement to examine and copy documents.
Plaintiffs in both lawsuits also asserted that the special taxes were null, void, and unenforceable because their passage was obtained through fraud and misrepresentation. In support of these assertions, plaintiffs introduced at the hearing a copy of a flyer persuading voters to approve the taxes on May 5. What particularly bothered plaintiffs was a statement on the flyer that the taxes were needed to prevent the possible combining or closing of some or all of the three EMSD schools. We note that nothing on this flyer indicated that it was produced on behalf of the MPSB. Nevertheless, even if the flyer was created or distributed at the behest of the MPSB, plaintiffs' remedy is in the political process. Therefore, they lack a cause of action to nullify the taxes based upon unfulfilled campaign promises.
Plaintiffs in both suits also sought a declaratory judgment that the MPSB violated La. R.S. 39:704 by using money raised by the special taxes for purposes other than those intended when the taxes were passed. La. R.S. 39:704 states:
The proceeds of any special tax shall constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied. The records of the taxing authority shall clearly reflect the objects and purposes for which the proceeds of the tax are used.
The report from the Legislative Auditor appears to support plaintiffs' claim, as the report revealed that funds raised by special taxes in the EMSD had been used for unintended purposes, although most of the funds had been since placed in the proper accounts.
A declaratory judgment action is designed to provide a means for adjudication of rights and obligations in cases involving an actual controversy that has not reached the stage where either party can seek a coercive remedy. Chauvet v. City of Westwego, 599 So.2d 294 (La.1992). It is well settled that courts will not decide abstract, hypothetical or moot controversies, or render advisory opinions with respect to such controversies. Louisiana Associated General Contractors, Inc. v. State Through Div. of Admin., Office of State Purchasing, 95-2105 (La.3/8/96), 669 So.2d 1185.
No controversy exists that the MPSB violated La. R.S. 39:704, as demonstrated by the Legislative Auditor Report. Accordingly, the exception of no cause of action was properly granted as to this claim for declaratory relief.
Finally, the Dukes plaintiffs seek a writ of mandamus ordering the MPSB to account for all money collected in the EMSD since May of 2001, and to place in the EMSD account all money collected in the district but placed in other accounts or spent outside the district.
A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law. La. C.C.P. art. 3863. The prescribed duty must be purely ministerial; mandamus will not lie to compel performance of an act which contains any element of discretion, however slight. Felix v. St. Paul Fire & Marine Ins. Co., 477 So.2d 676 (La.1985); Terral Barge Line Inc. v. Madison Parish Port Com'n, 22,251 (La. App.2d Cir.4/3/91), 577 So.2d 787; Golden v. Patient's Compensation Fund Oversight *127 Bd., 40,801 (La.App.2d Cir.3/8/06), 924 So.2d 459, writ denied, XXXX-XXXX (La.6/2/06), 929 So.2d 1261.
As noted above, the spending of the proceeds of a special tax is governed by La. R.S. 39:704. Tax revenues obtained from a special tax must be used for no other purpose than that stated in the proposition submitted to and approved by the electorate. Watkins v. Ouachita Parish School Board, 173 La. 259, 136 So. 591 (1931); Hodnett v. Monroe City School Bd., 270 So.2d 598 (La.App. 2d Cir.1972).
The MPSB contends that the decision as to how, where, and when to provide funds from the taxes is within its discretion. However, it is not within the discretion of the MPSB to spend funds collected by the special taxes outside the EMSD, as such actions would run afoul of the clear language in the tax propositions that the purpose of the taxes was to "provid[e] additional support for constructing, improving, maintaining, and operating public schools for the District, including salaries and benefits of teachers and employees." Accordingly, under the circumstances of this case, we find that the trial court erred in dismissing the Dukes plaintiffs' writ of mandamus ordering the MPSB to account for funds collected in the EMSD since May of 2001 and to place in the proper account all money collected in the EMSD from the special taxes but placed in other accounts or spent outside the EMSD.
The MPSB correctly asserts that the Dukes plaintiffs improperly cumulated their mandamus action with an action seeking declaratory relief.[4]See Citizens Organized for Sensible Taxation (C.O.S.T.) v. St. Landry Parish School Bd., 528 So.2d 1048 (La.App. 3d Cir.1988). A suit for declaratory judgment is an ordinary, not a summary proceeding. Frierson v. Sheridan, 593 So.2d 655 (La.App. 1st Cir.1991). A writ of mandamus may be brought by a summary proceeding. See La. C.C.P. art. 2592(6). However, in the interests of judicial economy, and in light of the fact that the claims for declaratory relief were properly dismissed, we will permit the aforementioned writ of mandamus to proceed despite it having been originally filed with a prayer for declaratory relief.

CONCLUSION
We reverse the judgment insofar as it dismissed the Dukes plaintiffs' writ of mandamus ordering the MPSB to account for all money collected in the EMSD since May of 2001 and to place in the EMSD account all money collected in the district from the special taxes but placed in other accounts or spent outside the district. In all other respects, the judgment is affirmed.
With each party to bear its own costs, the judgment is REVERSED IN PART and AFFIRMED IN PART, and the matter REMANDED for further proceedings.
NOTES
[1] An audit in June of 2004 had revealed that funds were being loaned from the sales tax and capital improvement funds to the general fund.
[2] Plaintiffs additionally complain on appeal that the trial court erred in not allowing testimony in opposition to the exceptions. Our review of the record fails to show that the plaintiffs attempted to offer this testimony, much less that the trial court did not allow it.
[3] Although the Dukes plaintiffs contend that removal of books, chairs, computers, desks, lab equipment, and tables is a violation of La. R.S. 39:704, there is no proof that these items were purchased solely through the revenues raised by the special taxes. More importantly, this was obviously a backdoor attempt to disrupt the closing and consolidation of the schools.
[4] The MPSB filed the dilatory exception of improper cumulation of actions against the Dukes lawsuit. At the hearing on the exceptions, the trial court stated that it was granting the exceptions without specifically stating which exceptions were being granted. The judgment signed by the trial court on June 12, 2006, did not mention the exception of improper cumulation of actions.