# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 12-349
## consolidated with 12-350


**JOHN FREEMAN, ET AL.**

**VERSUS**

**L. J. DUREL, JR., ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20106284
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## PHYLLIS M. KEATY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Jimmie C. Peters, Marc T. Amy, J. David Painter, and Phyllis M. Keaty, Judges.


**Cooks, J., dissents and assigns written reasons.**

**REVERSED.**

**Ernest L. Johnson**
**Atorney at Law**
**3313 Government Street, Suite G**
**Baton Rouge, LA 70806**
**(225) 334-7490**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **John Freeman**
    **Joseph Dennis**
    **Leon Simmons**

**Alfreda Tillman Bester**
**Tillman Bester & Associates**
**4014 Salem Drive**
**Baton Rouge, LA 70814**
**(225) 273-9449**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
**John Freeman**
**Joseph Dennis**
**Leon Simmons**

**Charles L. Patin, Jr.**
**Kean Miller, LLP**
**400 Convention Street, Suite 700**
**Baton Rouge, LA 70802**
**(225) 382-3430**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
**L. J. Durel, Jr.**
**Lafayette City-Parish Council**

**Michael D. Hebert**
**City-Parish Attorney**
**Post Office Box 4017-C**
**Lafayette, LA 70502**
**(337) 232-3929**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
**L. J. Durel, Jr.**
**Lafayette City-Parish Council**

**Kay A. Theunissen**
**Mahtook & Lafleur**
**600 Jefferson Street, Suite 1000**
**P. O. Box 3605**
**Lafayette, LA 70502**
**(337) 266-2189**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
**L. J. Durel, Jr.**
**Lafayette City-Parish Council**

**KEATY, Judge.**

Defendants appeal from a judgment in favor of Plaintiffs reinstating Plaintiffs as commissioners of the Housing Authority of the City of Lafayette (HACL). Defendants further appeal from a judgment in favor of Plaintiffs declaring Defendant, Joey Durel (Durel), elected City-Parish President of the Lafayette City-Parish Consolidated Government, in contempt of court for his decision to remove Plaintiffs as commissioners of the HACL. Plaintiffs answer the appeal. For the following reasons, we reverse.

## FACTS AND PROCEDURAL BACKGROUND

On August 27, 2010, Plaintiffs, John Freeman (Freeman), Joseph Dennis (Dennis), and Leon Simmons (Simmons),[1] were removed by Durel from their positions as commissioners of the HACL for "neglect of duty," which is one of the statutory grounds for removal under La.R.S. 40:537. The removal letters referenced irregularities noted in the audited financial reports for the HACL. Plaintiffs timely requested an appeal with the Lafayette City-Parish Council (Council). Following a hearing on Plaintiffs' appeal on September 21, 2010, the Council sustained Plaintiffs' removal.

Plaintiffs subsequently filed a "Petition for Injunctive Relief, Writ of Mandamus and Declaratory Judgment" in the Fifteenth Judicial District Court against Defendants, the Council, and Durel, in his official capacity as City-Parish President, to appeal their removals and to prohibit Durel from appointing new commissioners in the interim. That suit was assigned to Docket Number 2010-6284 (Suit Number 1). Plaintiffs amended the foregoing suit to seek a temporary restraining order, which was denied.

---

[1] According to the record, of the seven commissioners, one resigned; two were dismissed, but did not challenge their dismissal; and another was not removed. Plaintiffs in the instant matter, Freeman, Dennis, and Simmons, challenged their removal.

A hearing was held on October 12, 2010, whereby the trial court reversed the removal and immediately reinstated the three commissioners, finding that the action of Durel was arbitrary and capricious for not removing another, fourth, commissioner for the same reasons. Judgment was signed on October 27, 2010. Neither Plaintiffs nor Defendants appealed the order, and it became final.

Freeman, Dennis, and Simmons, in their capacity as commissioners, held a special board meeting of the HACL on October 26, 2010. The "Minutes of Special Board Meeting of the Housing Authority of the City of Lafayette" state that the meeting was "called to order and on roll call the following members of the board were present: Commissioners: Joseph Dennis, Leon Simmons, and John Freeman." The minutes also show that Dan Rodriguez and Cheryl Williams, representatives of the United States Department of Housing and Urban Development (HUD), were also present.

Freeman, Dennis, and Simmons were the only commissioners present during this meeting and allegedly removed or excluded the public and media from a portion of their meeting. Durel, thereafter, issued another removal letter to Plaintiffs on November 19, 2010, citing both "neglect of duty" and "misconduct in office" arising out of Plaintiffs' alleged exclusion of the public from a portion of their public meeting, along with other violations of the Louisiana Open Meetings Law. *See* La.R.S. 42:16; La.R.S. 42:17. This November 19, 2010 removal letter was based upon alleged conduct which occurred after the immediate reinstatement of Plaintiffs as commissioners by the trial court on October 12, 2010.

Plaintiffs appealed their November 19, 2010 removal to the Council. The Council affirmed the November 19, 2010 removal on March 1, 2011. At that point, Plaintiffs did not file a separate suit appealing their removal. Rather, Plaintiffs filed a "Motion for Contempt of Court Against Defendants, Reinstatement of

2

Movers, and Stay of Action to Remove" in Suit Number 1. The motion sought to have Durel held "in contempt of court" along with substantive relief in terms of reinstatement and a stay of the November 19, 2010 removal order.

Hearing on this motion was initially scheduled for March 11, 2011, and was ultimately rescheduled due to the inability to timely serve Defendants. Defendants filed a Motion for Continuance and/or Stay, objecting to the lack of service of the motion on all Defendants and challenging Plaintiffs' failure to comply with the applicable codal and civil rules regarding the filing and allotment of cases. Defendants also filed a Motion to Dismiss based upon Plaintiffs' alleged failure to comply with filing and random allotment rules. That motion was denied, *sua sponte*, without a hearing. Finally, Defendants filed a dilatory exception of "Improper Cumulation of Actions," which was also denied.

Plaintiffs subsequently filed a separate "Petition for Appeal of Lafayette City Council March 1, 2011 Decision" on March 29, 2011, which was assigned Docket Number 2011-1843 (Suit Number 2) and allotted to a different judge than the judge presiding over Suit Number 1. On March 31, 2011, Plaintiffs filed and had signed by the trial court in Suit Number 2, *ex parte*, an order consolidating Suit Number 2 with Suit Number 1. The consolidation was signed in Suit Number 2 before Defendants were served with the suit and before Defendants filed any responsive pleadings. On March 28, 2011, three days prior to the consolidation, HUD issued a notice of default to the HACL.

Hearing on the consolidated cases was set for October 31, 2011. On October 20, 2011, Defendants filed a "Supplemental Brief Regarding Exceptions, Reinstatement and Contempt Hearing" which raised issues of lack of jurisdiction over the March 7, 2011 Petition for Reinstatement filed in Suit Number 1, the preemption or mootness of Plaintiffs' claims based on the HUD takeover, and the

improper consolidation of Suit Number 2 with Suit Number 1.  On October 25, 2011, Defendants filed a "Peremptory Exception of Failure to Join Indispensable Party" based upon the March 2011 HUD takeover of the HACL.  The trial court denied the peremptory exception without hearing.  Thereafter, at the October 31, 2011 hearing, the trial court refused to address Defendants' procedural objections, including the improper consolidation of the two cases and the issue of the HUD takeover.

After reviewing the record from the March 1, 2011 Council hearing, along with testimony from Durel, the trial court ruled that Plaintiffs were entitled to reinstatement.  The trial court further held that Durel had engaged in contempt of court, fined him $258, and ordered him to serve fifteen days in the parish jail, with the jail time to be suspended if he performed eight hours of community service.

Defendants now appeal the propriety of the trial court's reinstatement of the three commissioners of the HACL and the trial court's holding that Durel was in contempt of court for his decision to remove these three commissioners on November 19, 2010.

## LAW

Plaintiffs are protected by the procedural safeguards granted by La.R.S. 40:537, entitled "**Removal of commissioners**," which provides, in pertinent part:

A.  (1)  A commissioner of a local housing authority may be removed for neglect of duty, misconduct in office, or conviction of any felony.

(2)  A commissioner of a local housing authority in any municipality or parish may be removed on any such grounds by the chief elected official of the municipality or parish appointing the commissioner, or if no chief elected official exists, then by the governing body thereof.

. . . .

4

(4)    A commissioner of a regional or consolidated housing authority may be removed on any such grounds by the governing body of the municipality or parish that originally appointed the commissioner.

B.    The chief elected official or the governing body of the municipality or parish, as the case may be, which seeks to remove a commissioner shall send a notice of removal to such commissioner, which notice shall set forth the charges against him or her.  Unless, within ten days from the receipt of such notice, such commissioner files with the clerk or secretary of the municipality's or parish's governing body a request for a hearing before the governing body, the commissioner shall be deemed removed from office.  If a request for hearing is so filed, the governing body of the municipality or parish, as the case may be, shall hold a hearing, not sooner than ten days subsequent to the date a hearing is requested, at which the commissioner shall have the right to appear in person or by counsel and the governing body shall determine whether the removal shall be upheld.  If the removal is not upheld by the governing body, the commissioner shall continue to hold his or her office.

The Council and Durel complied with the mandate of La.R.S. 40:537(B) when Durel sent notice to Plaintiffs on November 19, 2010, and when the Council afforded a hearing on March 1, 2011 to review Durel's action in removing Plaintiffs for a second time.

In reviewing the administrative actions of a governmental body, the function of the trial court is to serve as a court of judicial review, and the trial court cannot substitute its opinion for that of the governmental body absent a finding of arbitrary, capricious action.  *Tanner v. City of Baton Rouge,* 422 So.2d 1263 (La.App. 1 Cir. 1982), *writ denied*, 429 So.2d 128 (La.1983).  "The trial court applies the manifest error standard of review in reviewing the facts as found by an administrative tribunal; the trial court applies the arbitrary and capricious test in reviewing the administrative tribunal's conclusions and its exercise of discretion." *Women's and Children's Hosp. v. State Dep't of Health and Hosps.*, 07-1157, p. 8 (La.App. 1 Cir. 2/8/08), 984 So.2d 760, 766, *writ granted*, 08-946 (La. 6/27/08), 983 So.2d 1287, *affirmed*, 08-946 (La. 1/21/09), 2 So.3d 397.  Unless the record

contains insufficient evidence to support the administrative decision or shows that the decision was clearly wrong, the decision must be affirmed. *Almerico v. Harahan Mun. Fire and Police Civil Serv. Bd.,* 07-502 (La.App. 5 Cir. 11/27/07), 973 So.2d 799, *writ denied*, 07-2494 (La. 2/22/08), 976 So.2d 1287.

The trial court found that the decision made by the Council on March 1, 2011, was improper and reversed the Council's decision affirming Durel's second removal of Plaintiffs. "On review, we must scrupulously examine the record to determine, not whether the conclusion reached by the trial judge was right or wrong, but whether his conclusion was reasonable in light of the evidence and testimony adduced at trial." *Thomas v. Evangeline Parish Sch. Bd.*, 98-1458, p. 6 (La.App. 3 Cir. 3/24/99), 733 So.2d 102, 106, *writ denied*, 99-1056 (La. 6/4/99), 744 So.2d 626.

## DISCUSSION

The main issues for appeal are the propriety of the trial court's reinstatement of three commissioners of the HACL and the trial court's holding that Durel was in contempt of court for his decision to remove these commissioners for a second time.

### Propriety of the Trial Court's Reinstatement

As previously mentioned, Plaintiffs were initially removed from their position as commissioners of the HACL for "neglect of duty" on August 27, 2010. Plaintiffs were subsequently reinstated by the trial court by judgment dated October 27, 2010. Since that judgment was not appealed by either side and became final, the following analysis deals solely with the propriety of the trial court's reinstatement of Plaintiffs following their subsequent removal from office on November 19, 2010.

6

The record shows that Durel issued a second removal letter to Plaintiffs on November 19, 2010, citing both "neglect of duty" and "misconduct in office" arising out of Plaintiffs' actions during their October 26, 2010 board meeting. In the letter, Durel alleged, amongst other things, the following:

2.  Prior to going into Executive Session, you did not call for a vote as explicitly required by the Open Meetings Law. La. R.S. 42:16.

3.  The purpose for which you went into Executive Session was verbally stated to be to discuss "personnel issues." While the Open Meetings Law permits an Executive Session to consider and discuss the "character, professional competence, . . . of a person," an Executive Session for such purposes may only be held if (a) it is disclosed on the agenda and (b) the person(s) to be discussed are given twenty-four (24) hours' notice prior to the holding of the meeting. Neither of these statutory requirements took place. La. R.S. 42:17.

4.  After holding the Executive Session, you did not vote to go back into open session. La. R.S. 42:16.

In Louisiana, courts should not interfere with the exercise of a mayor's discretion in the absence of a clear showing of illegality or abuse, and there is a presumption of validity unless the contrary is clearly shown. *LaFleur v. Roberts,* 157 So.2d 340 (La.App. 3 Cir. 1963). Thus, the issue on appeal is whether there was substantial evidence supporting Durel's decision to remove the Plaintiffs as commissioners of the HACL on November 19, 2010.

The "Minutes Of Special Board Meeting Of The Housing Authority Of The City Of Lafayette," dated October 26, 2010, and contained in the record, show that the only commissioners present were Plaintiffs Freeman, Dennis, and Simmons. There is conflicting evidence and testimony regarding whether an executive session was actually held during the October 26, 2010 meeting. Nevertheless, the minutes reflect that there was an executive session but are void of any record of Plaintiffs voting on the question of holding an executive session and the reasons

7

for holding an executive session.[2] The minutes are further void of any record of Plaintiffs voting on going back into open session after holding the executive session.

The record contains the minutes of the March 1, 2011 Council meeting wherein Plaintiffs' appeals were heard regarding their conduct which occurred in the October 26, 2010 board meeting and which prompted Durel to remove them from their positions a second time. The minutes contain the testimony of State Representative Ricky Hardy (Hardy), who was present at the October 26, 2010 board meeting. The minutes indicate the following with respect to Hardy's testimony regarding the executive session:

> Hardy reiterated that a motion to go into Executive Session was made after Ms. Carmouche indicated that they needed to vote, but he could not recall a vote. The Commission indicated that they were going into Executive Session to discuss personnel matters but they did not say what personnel matters specifically.

Hardy further testified that Ms. Danielle Carmouche advised that a vote was needed to go back into regular session following the executive session although such vote never occurred.

The minutes of the March 1, 2011 Council meeting contain the testimony of Simmons who indicated that he made the motion to go into executive session although there was no formal vote. Freeman testified that there was no vote, and Dennis testified that he did not carry a vote to go into executive session. Simmons,

---

[2] Louisiana Revised Statutes 42:16 provides:

A public body may hold executive sessions upon an affirmative vote, taken at an open meeting for which notice has been given pursuant to R.S. 42:19, of two-thirds of its constituent members present. An executive session shall be limited to matters allowed to be exempted from discussion at open meetings by R.S. 42:17; however, no final or binding action shall be taken during an executive session. **The vote of each member on the question of holding such an executive session and the reason for holding such an executive session shall be recorded and entered into the minutes of the meeting.** Nothing in this Section or R.S. 42:17 shall be construed to require that any meeting be closed to the public, nor shall any executive session be used as a subterfuge to defeat the purposes of this Chapter. (Emphasis added).

Freeman, and Dennis also testified that no executive session was held on October 26, 2010. On the other hand, the testimonies of Simmons, Freeman, Dennis, and Hardy, and the minutes of the October 26, 2010 meeting indicate that everyone else in attendance at the meeting left the room for approximately fifteen to thirty minutes.

Despite Plaintiffs' testimony that no executive session was held during the October 26, 2010 board meeting, the minutes reflect that the board went into executive session and that non-board members left the room for thirty minutes. This indicates to us that an executive session did take place. There is also evidence in the record that Plaintiffs failed to vote prior to going into executive session, thus violating La.R.S. 42:16. This procedural violation supports the Council's and Durel's removal of Plaintiffs as commissioners of the HACL for "neglect of duty" and "misconduct in office."

Although there is also evidence contained in the record that Plaintiffs failed to vote on going back into open session after holding the executive session, La.R.S. 42:16 does not require a vote on going back into open session after holding the executive session. As such, we find that Plaintiffs have not violated La.R.S. 42:16 in this regard.

As to whether a violation occurred with respect to personnel issues, the minutes of the October 26, 2010 board meeting show that although personnel issues were listed as the third topic on the agenda for the October 26, 2010 meeting, such issues were not actually presented at the board meeting. Hardy testified that the commissioners indicated they were going into executive session to discuss personnel matters although they did not specify which personnel matters were to be discussed.

There is conflicting evidence contained in the record as to whether personnel issues were actually discussed at the board meeting. In accordance with La.R.S. 42:17, Plaintiffs, as commissioners of HACL, were required to give those persons who were to be discussed at the October 26, 2010 meeting twenty-four hours' written notice prior to said meeting. There is no indication in the record showing that such notice was timely given. The foregoing also supports the Council's affirmation of Durel's removal of Plaintiffs as commissioners of the HACL for "neglect of duty" and "misconduct in office."

A review of the record indicates that in Durel's November 19, 2010 letter, Plaintiffs were being removed in accordance with La.R.S. 40:537 for "neglect of duty" and "misconduct in office" arising out of their conduct in holding an executive session in violation of the Louisiana Open Meetings Law. On December 20, 2010, the District Attorney for the Parish of Lafayette filed suit against Plaintiffs for enforcement of the provisions of the Louisiana Open Meetings Law under La.R.S. 42:26 and 42:28.[3] This suit was dismissed on February 15, 2011. Plaintiffs argue that since the suit was dismissed, Durel should have been barred from seeking affirmation of their removal. Plaintiffs' argument on this issue is without merit since it was Plaintiffs, not Durel, who requested a hearing with the Council set for March 2011. We note that La.R.S. 40:537(B) provides that a commissioner who has received notice of removal, i.e., Plaintiffs, and not the chief elected official, i.e., Durel, is responsible for requesting a hearing before the governing body regarding any removal notice. The record contains separate correspondence from Freeman, Dennis, and Simmons to Durel, dated

---

[3] Michael Harson, in his capacity as District Attorney, filed a "Petition for Enforcement of the Provisions of the Open Meetings Law" against Dennis, Freeman, and Simmons, which was filed with the Lafayette Parish Clerk of Court on December 20, 2010. The matter was assigned to Judge Arthur Planchard of the Fifteenth Judicial District Court, Docket Number 2010-8116.

November 29, 2010, wherein all state the following: "Therefore, I am requesting a hearing before the governing body as entitled under the Revised Statute noted [La.R.S. 40:537]." The foregoing indicates that it was Plaintiffs, and not Durel, who caused "the Lafayette City-Parish Council to conduct a hearing on March 1, 2011" pursuant to their November 29, 2010 correspondence. Thus, Plaintiffs argument is without merit.

The first circuit's decision in *Bailey v. Department of Public Safety and Corrections*, 05-2474 (La.App. 1 Cir. 12/6/06), 951 So.2d 234, is similar to the case at bar. In *Bailey*, the court affirmed the dismissal of a state trooper for "misconduct" following his off-duty arrest for driving while intoxicated (DWI), even though the trooper was acquitted of DWI charges in the district court. The evidence established that the trooper appeared intoxicated at the time of the arrest, was found to have a blood alcohol concentration level of almost twice the legal limit, made false statements to law enforcement officers, and attempted to use his status to avoid consequences of his illegal actions. *Id*. While this case was decided in the context of a civil service dispute, the same rationale applies in the instant case. We find Plaintiff's argument on this issue without merit.

In summary, we find that Plaintiffs violated La.R.S. 42:16 by failing to vote prior to going into executive session. We further find that Plaintiffs failed to timely give written notice as required by La.R.S. 42:17 to those persons who were to be the subject of personnel issues on the agenda of the October 26, 2010 board meeting. Additionally, we find Plaintiffs' argument that, in accordance with La.R.S. 40:537, Durel was barred in his removal attempt because of the dismissal of the District Attorney's action is without merit. Thus, we find that the trial court's reinstatement of Plaintiffs as commissioners was not reasonable, and we reverse.

11

**Contempt**

Defendants contend that the trial court erred in holding Durel in contempt and that the sanctions imposed on Durel are excessive and unwarranted under the circumstances. Plaintiffs contend the trial court was correct in holding Durel in contempt of court as Durel allegedly disobeyed the trial court's October 27, 2010 judgment ordering their reinstatement as commissioners.

To find a person guilty of constructive contempt, it is necessary to find that he violated an order of court knowingly, intentionally, purposefully, and without justifiable excuse. *Lang v. Asten, Inc.,* 05-1119 (La. 1/13/06), 918 So.2d 453. Unless a litigant willfully disobeys a direct order of the court issued prior to the contempt rule, he should not be held in contempt, even if his acts tend to frustrate the opposing litigant. *Hodges v. Hodges,* 02-489 (La.App. 3 Cir. 10/2/02), 827 So.2d 1271, *writ denied*, 02-2485 (La. 11/8/02), 828 So.2d 1122. Thus, we review the trial court's October 27, 2010 judgment which provides in pertinent part:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Petitioners, John Freeman, Joseph Dennis and Leon Simmons, be, and they are hereby, reinstated as members of the Board of Commissioners of the Housing Authority of the City of Lafayette.

The foregoing judgment ordered the reinstatement of the Plaintiffs as commissioners of the HACL. Although the judgment was actually signed one day following the board meeting on October 27, 2010, the October 15, 2010 trial court minute entry indicates the trial court ordered that Plaintiffs were to be reinstated as commissioners "immediately."[4] The record indicates that the Plaintiffs were

---

[4] The minute entry, dated October 15, 2010, states, in pertinent part:

> Accordingly, only for the reason that the action of Mr. Durel in removing certain commissioners and keeping certain others, notwithstanding the fact that all were serving as commissioners during the period of the subject audit, the court finds that such action amounts to an arbitrary and capricious act and is hereby reversed. (see authority, supra). Therefore, Plaintiffs are hereby reinstated as commissioners of the Housing Authority board immediately.

12

reinstated as commissioners of the HACL as evidenced by their participation in the October 26, 2010 board meeting.

Durel's November 19, 2010 letter removing Plaintiffs as commissioners cites "neglect of duty" and "misconduct in office" based upon violations of the Louisiana Open Meetings Law. The record is clear that Durel did not willfully disobey a direct order of the court. His action fails to constitute contempt. Thus, we find that the trial court erred in issuing the contempt of court against Durel, and we reverse.

## HUD's Takeover of the HACL

Finally, Defendants contend that the trial court erred in its denial of their exception of failure to join HUD as an indispensable party. However, we will not review the issue as we hold that HUD's takeover of the housing authority preempted any action of the trial court and rendered Plaintiffs' claims for reinstatement moot.

The doctrine of federal preemption is rooted in the Supremacy Clause and activated by congressional intent. *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 1025 S.Ct. 3014 (1982). Even where Congress has not entirely regulated a specific area, state law will be nullified to the extent it directly conflicts with federal law or hinders achievement of congressional objectives. *Id. See also,* *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360 (5th Cir. 1995). The area of public housing is extensively regulated by HUD. 42 U.S.C. 1434. These regulations include extensive provisions allowing HUD to assume control of local housing authorities who default on their agreements with HUD. 42 U.S.C. 1434(d).

In the present case, the record shows that HUD issued correspondence to Durel, Dennis, and the HACL on March 28, 2011, declaring substantial default. HUD advised that it was taking possession and control of the HACL. The record

13

further shows correspondence from HUD to the trial court dated October 26, 2011, which provided, in pertinent part:

> HUD is in possession of the Housing Authority as a result of HUD's March 28, 2011 Declaration of Substantial Default. . . . Pursuant to federal law, HUD has appointed the Board of Commissioners of the Housing Authority. As such, it is HUD's position that the HUD-appointed board is the only board with authority to act with respect to the Housing Authority until HUD relinquishes possession of the Housing Authority.

The foregoing is evidence that HUD had assumed control of the HACL prior to the trial court's November 10, 2011 judgment reversing the March 1, 2011 decision by the Council affirming Durel's removal of Plaintiffs.[5] In light of the letters contained in the record and the application of the doctrine of federal preemption, we conclude that the trial court was without the power to reinstate Plaintiffs as commissioners. Additionally, Plaintiffs' claim for reinstatement under La.Code Civ.P. art. 927 became moot and failed to allege any viable cause of action given the intervening HUD takeover.[6]

## DECREE

For the foregoing reasons, we reverse the trial court's decision reinstating Plaintiffs as commissioners of the Housing Authority of the City of Lafayette. We further reverse the trial court's judgment in favor of Plaintiffs declaring Defendant, Joey Durel, in contempt of court for Durel's decision to remove Plaintiffs as commissioners of the Housing Authority of the City of Lafayette. We further reverse the trial court's reinstatement of Plaintiffs and its finding Durel in

---

[5] The Judgment signed by the trial court dated November 10, 2011, and based upon the October 31, 2011 hearing regarding the Petition for Appeal and Motion for Contempt filed by Plaintiffs states, in pertinent part:

> IT IS HEREBY ORDERED, ADJUDGED and DECREED that the Petition for Appeal filed by plaintiffs be and it is hereby GRANTED. The March 1, 2011 decision by the Lafayette City-Parish Council is reversed.

[6] *See Baker v. Morehouse Parish Sch. Bd.*, 41,874, 41,875 (La.App. 2 Cir. 4/25/07), 956 So.2d 121 (taxpayer suit contesting school closing was rendered moot by federal court ruling approving closing and consolidation of schools).

14

contempt of court as moot. Costs of this appeal are assessed to Plaintiffs/Appellees, John Freeman, Joseph Dennis, and Leon Simmons.

**REVERSED.**

COURT OF APPEAL

THIRD CIRCUIT

STATE OF LOUISIANA


12-349 c/w 12-350

JOHN FREEMAN, ET AL.

VERSUS

L.J. DUREL, JR. ET AL.

**Cooks J., Dissents**.

John Freeman, Joseph Dennis, and Leon Simmons (Plaintiffs) were Commissioners for the Housing Authority for the City of Lafayette (HACL) who were removed from office by the Lafayette City-Parish President, Joey Durel, Jr. (Durel) for "neglect of duty" and "misconduct in office." *The Commissioners of HACL serve without compensation.* Plaintiffs were first removed from office by Durel on August 27, 2010. They appealed their removal to the Lafayette City-Parish Council (Council) who, after an administrative hearing, upheld the removal. Plaintiffs then appealed the Council's decision to the Fifteenth Judicial District Court which overturned the removal and ordered Plaintiffs reinstated. **No one appealed that decision, and it has long been a final judicial decision signed on October 27, 2010.**

Subsequent to the first removal by Durel, but prior to the signing of the October 27, 2010 judgment, Durel "removed" Plaintiffs a second time for "neglect of duty" and "misconduct in office" asserting as the **only basis** for that removal five alleged violations of Louisiana's Open Meetings Law. These violations allegedly occurred on October 26, 2010. Plaintiffs filed a "Motion For Contempt of Court Against Defendants, Reinstatement of Movers, and Stay of Action to

Remove." This pleading was filed in the first suit by Plaintiffs in which judgment was rendered on October 27, 2010 by Judge Rubin. Defendants filed a "Motion For Continuance and/or Stay" and filed a "Motion To Dismiss" which was *sua sponte* denied. Plaintiffs timely filed a "Petition for Appeal of Lafayette City Council March 1, 2011 decision," affirming Durel's second removal, which suit was assigned a new docket number, 2011-1843, and randomly allotted to Judge Broussard. Plaintiffs then filed a motion to consolidate the first suit (which included the contempt rule before Judge Rubin) with the appeal of the Council's second affirmance of the removal. Judge Broussard granted the order consolidating the two proceedings, deferring to Judge Rubin. Defendants then filed an exception of "Improper Cumulation of Actions." This exception was also denied. In the midst of the on-going battle to remove these Commissioners, the U.S. Dept. of Housing and Urban Development (HUD) issued a written notice of default, as per the provisions of U.S.C.A. 42:1437(d), taking active control of HACL and stating that neither the Plaintiffs nor the Commissioners appointed as their replacements were recognized by HUD as having any authority over HACL as of March 28, 2011, *until HUD relinquishes possession of the Housing Authority*. HUD's decision to take over HACL was in part precipitated by its concern for HACL's ongoing operation in the face of continued litigation involving successive attempts by Durel to remove the Commissioners and Durel's interim board's failure to provide requested audit information and other records. Not surprising, Defendants then filed a "Preemptory Exception of Failure to Join Indispensable Party" alleging HUD was now an indispensable party to the pending proceedings. The trial court eventually found Durel and the Council again acted arbitrarily and capriciously in removing Plaintiffs and reversed their decision. The trial court also held Durel in contempt of court for his second attempt to remove Plaintiffs. Defendants appeal the trial court's judgment asserting that Durel and the Council properly removed

Plaintiffs; reinstatement of Plaintiffs was error; and it was error to hold Durel in contempt.

## LEGAL ANALYSIS

The majority, with deliberate purpose and forethought, dances around settled law and jurisprudence before resting its decision on a legal matter neither it or Durel and the City Council had the authority to entertain. In a separate proceeding, Judge Planchard , appointed *ad hoc* by the Louisiana State Supreme Court, found the Commissioners did not violate the Open Meetings Law. The District Attorney for Lafayette Parish did not seek review of that decision and the majority in this case admits that determination also is final. The law has long been settled that subject matter jurisdiction once vested by the legislature can never be divested or conferred by acquiescence or waiver.

> Jurisdiction over the subject matter of a controversy is "the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted," La.Code Civ. Proc. Art. 2. Subject matter jurisdiction is created by the constitution or legislative enactment, see, e.g., La.Const. Art. 5, and cannot be waived or conferred by the consent of the parties, see La.Code Civ. Proc. Arts. 3 & 925.

*Amin v. Bakhaty*, 01-1967, p. 6, (La. 10/19/01), 798 So.2d 75, 80.

Our review of this case should have ended here. Neither Durel nor the Lafayette City Council had authority to take any course of action against the Commissioners based on their independent findings that they violated the Open Meetings Law; and it goes without citation that they had no authority to override a district court's decision finding the contrary. When this fatal procedural defect was called to the majority's attention its response was not to embrace a rule of law that has long been settled but to find ways to "chicken dance" around it. The majority's dance goes like this – since Plaintiffs requested a hearing before the

Council it is they who put the Open Meetings Law question before the Council and not Durel; *ipso*, there is no merit to any contention that we too lack jurisdiction to review a "subject matter" originating in the wrong tribunal. Recognizing that acquiescence or waiver never suffices to divest or confer jurisdiction, my colleagues create a "it's-your-own-fault-exception" never before mentioned in the law or jurisprudence of this State. Voila', "end of discussion" they proclaimed as they rush to review the merits of this case.

The legislature has not seen fit to vest administrative bodies, specifically the City Council of Lafayette and Durel acting as City-Parish President, with authority to decide whether a violation of the Open Meetings Law has occurred and to impose the punishment statutorily defined. Correctly so, counsel for these parties at oral argument acknowledged that her clients did not have authority to decide issues involving the Open Meetings Law. Faced with this quagmire, she simply said, to paraphrase "but, they were fired for neglect of duty and misconduct in office."[1] The legislature vested original jurisdiction exclusively in the District Courts of this State. In this case, the District Attorney for the Parish of Lafayette, after urging by Durel, filed a civil suit naming the present Appellees as defendants and alleging the *same violations* contained in the grounds used by Durel to terminate the Commissioners. That matter was assigned to Judge Planchard and fully tried by him in a court of competent jurisdiction. Durel's second attempt to remove the Commissioners **solely** based on conduct that the District Court found did not violate the Open Meetings Law ran afoul of law and the limited authority vested with him and the Lafayette City Council.

---

[1] Louisiana Revised Statute 40:537 declares that the generic use of misconduct in office and neglect of duty alone is not enough. The appointing authority "*shall* set forth the charges against [a housing commissioner]." La. R.S. 40:537(B) (emphasis added). Other than the Open Meetings Law violations, Durel did not state any other basis that had not been ruled on by Judge Rubin in reversing the first removal of the Commissioners.

4

The majority of this court now compounds this procedural misstep. Our appellate review jurisdiction does not vest us with the power to reverse the findings of district courts on "subject matters" originally and exclusively assigned to them by the legislature once the deadline for appeal has expired. The judgments below become final and enforceable. The majority's decision to review the merits of this case by ferreting through the record to independently determine whether the Open Meetings Law was violated by the Commissioners is nothing more than a collateral attack on the final judgment already rendered by Judge Planchard. Again, the law and jurisprudence forbid us from two-stepping past well established procedural rules that are so elementary they often are accepted without much discussion. Enough said, except I note that it is Durel and Lafayette City Council's failure to avail themselves of either the proper process available to seek removal of the Commissioners or appellate review when the matter was first heard by Judge Rubin, that places them in their present precarious position. Their second "self-help" attempt to remove the Commissioners places them in no better position. We are powerless to throw them a rope; they must extricate themselves from the sinkhole they have created.

Even if it can be urged that a "neglect of duty or misconduct" removal from office may be bootstrapped to an Open Meetings Law violation, whether a violation actually occurred *must* first be found by a district judge. Further, *the enumerated remedies for violating the Open Meetings Law do not include removal from office.* The maximum civil fine for a violation of this law by a member of a public body is $100 – **not removal from the board!** La.R.S. 42:28.

Next, I note that the effective date of a judgment is the date of the signing of the judgment. It is the date the judgment was signed by Judge Rubin that must be the "starting point" of any inquiry on the merits of Appellants' claims. *See*

5

*Malbrough v. Kiff*, 312 So.2d 915, (La.1 Cir. 1975); La. Code Civ. P. art. 1911. "It is from that date [signing of the judgment] prescription, execution, and all other rights arise." *Ibid*; *see* also *Succession of Meyers*, 133 So. 897 (La.App. Orleans, 1931). "A judgment is not complete, nor does it take effect, until actually signed." *Brand v. Livaudais*, 3 Mart., O.S. 389, (1814). "… [A] judgment is not final until it is signed." *Young v. Geter*, 187 So. 830 (La.App. 2 Cir.1939). This is well settled and unquestioned law in Louisiana. Plaintiffs had no authority to call a meeting on October 26, 2010, because they had been removed as Commissioners. There was no stay order in place and no suspensive appeal which allowed them to continue serving as Commissioners during the pendency of the appeal from an adjudicated ruling by an administrative body. Whatever this "gathering" of people was On October 26, 2010, it was not a legally constituted meeting of the HACL. Judge Rubin's judgment was not effective until signed, and *his order reinstating Plaintiffs to act as Commissioners was not signed until October 27, 2010*. Nothing that occurred on October 26, 2012 could form any basis for any action against the Plaintiffs. The public, Durel, and the Council were all free legally to ignore any action they took on that day.

Durel's action, later sanctioned by the Council, was clearly no more than an obvious attempt to circumvent the judgment he knew was forthcoming from the district court on the eve of the issuance of that very judgment. Moreover, *Durel once again removed only the three Plaintiffs for alleged violations of the Open Meetings Law, but at least two of his five allegations involved all members of the Board of Commissioners.* Durel's letter addressed to Plaintiffs dated November 19, 2010, set forth five alleged violations of the Open Meetings Law which Durel asserted constituted "neglect of duty and misconduct in office." In the letter Durel states:

1. Although the intention to hold an Executive Session was disclosed on the agenda of the meeting of October 26, 2010, the agenda did not indicate the precise purpose for which the Executive Session was to be held. La.R.S. 42:16.

2. Prior to going into Executive Session, you did not call for a vote as explicitly required by the Open Meetings Law. La.R.S. 42:16.

3. The purpose for which you went into Executive Session was verbally stated to be to discuss "personnel issues." While the Open Meetings Law permits an Executive Session to consider and discuss the "character, professional competence . . . of a person." An Executive Session for such purposes may only be held if (a) it is disclosed on the agenda and (b) the person(s) to be discussed are given twenty-four (24) hours' notice prior to the holding of the meeting. Neither of these statutory requirements took place. La.R.S. 42:17.

4. After holding the Executive Session, you did not vote to go back into open session. La.R.S. 42:16.

5. Contrary to the requirements of the Open Meetings Law, a copy of the Open Meetings Law is not posted at the office of the Housing Authority. La. R.S. 42:12B.

The majority states Durel's "November 19, 2010 removal letter was based upon alleged conduct which occurred after the immediate reinstatement of Plaintiffs as commissioners by the trial court on October 12, 2010." *October 12, 2010 is not an operative date in this matter except to show that Durel knew as of that date what the final judgment of the district court would be when he began to formulate his capricious preemptive strike* based on the Commissioners' announcement that they intended to discuss certain matters on October 26, 2010. Again I reiterate, Plaintiffs were removed as Commissioners long before the October 26, 2010 "gathering" date and had no authority to call or hold an official board meeting prior to the signing of the October 27, 2010 Judgment. Thus, Plaintiffs could not be guilty of any wrongdoing at such a "gathering" as it was void *ab initio* and not a meeting subject to any laws, including the Open Meetings Law.

Albeit the Open Meetings Law is not applicable here, perhaps understanding its purpose will serve some benefit. The Open Meetings Law is set forth in La.R.S. 42:11, et. seq. Louisiana Revised Statutes Section 42:12 sets forth the public policy basis for our open meetings law:

> A. It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy.

Louisiana law further sets forth the effect which flows from of a violation of the Open Meetings Law and lists the remedies for such violations:

> Any action taken in violation of this Chapter shall be voidable *by a court of competent jurisdiction.* A suit to void any action must be commenced within sixty days of the action. (emphasis added)

La.R.S. 42:24.

The remedies for a violation of the open meetings law are detailed in La.R.S. 42:26:

> A. In any enforcement proceeding the plaintiff may seek and *the court may grant* any or all of the following forms of relief:
>
> (1) A writ of mandamus.
> (2) Injunctive relief.
> (3) Declaratory judgment.
> (4) Judgment rendering the action void as provided in R.S. 42:24.
> (5) Judgment awarding civil penalties as provided in R.S. 42:28
>
> B. In any enforcement proceeding *the court has jurisdiction and authority* to issue all necessary orders to require compliance with, or to prevent noncompliance with, or to declare the rights of parties under the provisions of this Chapter. Any noncompliance with the orders of the court may be punished as contempt of court. (emphasis added)

Our Open Meetings Law, at La.R.S. 42:28, also provides the penalty for any member of a public body found to have violated the open meetings law:

Any member of a public body who *knowingly and willfully* participates in a meeting conducted in violation of this Chapter, shall be subject to *a civil penalty not to exceed one hundred dollars per violation.* The member shall be personally liable for the payment of such penalty. A suit to collect such penalty must be instituted within sixty days of the violation. (emphasis added)

In *Daigre v. Terrebonne Assoc. For Retarded Citizens*, 543 So.2d 1108 (La.App. 1 Cir. 1989), *writ denied* 548 So.2d 333 (La.1989), our sister circuit addressed technical violations of the Open Meetings Law strikingly similar to those alleged against the present Plaintiffs. In *Daigre*, the Executive Director of the Terrebonne Association for Retarded Citizens (TARC) brought an action against the public body for alleged violations of Louisiana's Open Meetings Law after being terminated from their employment at an executive session. Daigre alleged TARC did not give notice of the meeting pursuant to then La.R.S. 42:7.[2] He alleged further that the meeting was "procedurally invalid under [then] LSA-R.S. 42:6 because the members' vote on the question of going into an executive session and the reason for holding it were not recorded and entered into the minutes." He also alleged the board of directors violated then La.R.S. 42:6.1 "because the executive session authorized under the "character discussion" exception of LSA-R.S. 42:6.1 was not held at an 'open meeting' under LSA-R.S. 42:5 and LSA-R.S. 42:7." Daigre asked the court to void TARC's termination of his employment and to declare him to be the executive director. TARC admitted it was subject to the provisions of the Open Meetings Law. The trial court dismissed Daigre's suit despite its finding that TARC had "technically" violated the Open Meetings Law. The First Circuit Court of Appeal affirmed the trial court holding:

> We agree with the trial court that although there were technical violations of LSA-R.S. 42:4.1 through 4.8, they do not offer plaintiff any grounds for relief under the facts here. The Open Meetings Law was designed to allow the public to observe and evaluate public officials, public conduct, and public institutions. *Comment, Entering*

---

[2] La.R.S. 42:4.1 to 9 were re-designated as La. R.S. 42:11 to 42: 24 by Acts 2010, No. 861, Section 23.

*the Door Opened: An Evolution of Rights of Public Access to Governmental Deliberations in Louisiana and a Plea for Realistic Remedies,* 41 La.L.Rev. 192,194 (1980). It is meant to "protect citizens from secret decisions made without any opportunity for public input." *Delta Development Co. v. Plaquemines Parish Commission Council*, 451 So.2d 134, 138 (La.App. 4 Cir.), *writ denied*, 456 So.2d 172 (La. 1984). It is impossible to say here that plaintiff was denied any rights personally since he was present at the meeting with his lawyer and could have entered the executive session had he so desired. Plaintiff argues, however, that the lack of prejudice is irrelevant: that the statute must be liberally construed to protect the public's right to observe deliberations of public bodies. ***This argument is an attempt to bootstrap the noble ideals of the Open Meetings Law and the guarantee afforded Louisiana citizens under article 12, section 3, of the 1974 Louisiana Constitution to plaintiff's own natural desire to minimize his loss after he was terminated from employment by defendant.*** We agree with the reasons for judgment assigned by the trial court, which reasons are attached as an appendix to this opinion. (emphasis added)

*Daigre*, at 1109-10.

The trial court, as reflected in the appendix attached to and made part of the first circuit's ruling, reasoned :

> [T]he court finds that although there were some technical, very technical violations of 42:7 and 42:6, these violations were insignificant in view of the fact that the letter of the law is to protect individuals from matters that are not within their knowledge and to give them adequate notice and time to do something about it.
>
> The Court finds that this individual, the plaintiff, had adequate time and knowledge, had his lawyer there, and so any of these technical violations is certainly not grounds for the Court to void any action that they took at that time.

*Daigre*, at 1110-11.

In the matter at hand, Durel alleged Plaintiffs violated the Open Meetings Law by not calling for a vote to go into an executive session; not voting to go back into open session; and not following the proper procedure for discussing personnel issues in an executive session, allegations also made in *Daigre*. Durel also asserted two additional violations stating that the "intention to hold an Executive Session was disclosed on the agenda of the meeting of October 26, 2010" but the Commissioners failed to indicate on the agenda "the precise purpose for which the

Executive Session was to be held. La.R.S. 42:16." Finally, he alleged as a violation of the Open Meetings Law that "a copy of the Open Meetings Law [was] not posted at the offices of the Housing Authority. La.R.S. 42:12B."

There is not a smidgen of evidence in the record lodged with this court showing the actions of Plaintiffs on October 26, 2010 prejudiced the rights of any citizen in any manner. Further, the record is void of proof that the Commissioners *knowingly and intentionally* failed to follow the Open Meetings Law, a prerequisite to finding them civilly liable. Nevertheless, Durel decided to remove the Commissioners and to report their actions to the District Attorney asking him to bring suit against them pursuant to La.R.S. 42:25(B). As mentioned, that case was dismissed by Judge Planchard who found no violation of the Open Meetings Law. The District Attorney exercising his discretion and wisdom did not appeal that decision. Not satisfied with, and unwilling to accept the district court's proper exercise of its statutory authority, Durel continued to encourage the City Council to affirm his decision to remove the Commissioners.

When Judge Rubin asked Durel if he was aware of the ruling rendered by Judge Planchard, Durel responded "I knew that some--- a retired judge had kind of made some kind of ruling about that" but acknowledged that such ruling did not cause him to reconsider his notice of removal. As the Louisiana State Supreme Court instructed in *City of Lake Charles v. Bell*, 347 So.2d 494, 496-97 (La. 1977) ". . . [t]he deliberate refusal to obey an order of court without testing its validity through established process requires further action by the judiciary . . . ." We have been reminded repeatedly that "[a] court's power to decide includes [the] power to decide wrongly." *Id.* Our founders were keenly aware that *"[r]espect for the judicial process is a small price for the civilizing hand of law." Id.* (emphasis added). The trial judge in reviewing all of Durel's conduct had good reasons to

11

find that Durel was engaging in acts of nullification in contemptuous defiance of his October 27, 2010 judgment.

The majority's final "Hail Mary pass" to HUD using the federal preemption ball will not save Durel from his willful behavior or the Council's decision it was not vested with authority to make. The trial court did nothing to circumvent HUD's action or authority. Indeed Judge Rubin recognized he was powerless to do so. The record contains an exhibit, a letter from HUD to Judge Rubin, explaining that "*HUD is not a party in the above-captioned litigation*, (referencing the consolidated cases) and we do not inappropriately seek to influence the October 31, 2011 hearing set in this case, but to clarify to the Court HUD's actions and authority concerning the Housing Authority." The trial court ruled the Lafayette City-Parish Council's decision of March 2, 2011 was "improper and is reversed." The trial court stated "Well, listen, I'm being asked to make a decision on whether or not the decision was proper. I'm finding that it was not. So we'll cross that bridge when we get to it." This statement was made in regard to Defendants' assertion that the takeover by HUD made them an indispensable party and precluded action by the trial court, despite HUD's stated position. It did not. The effect and execution of Judge Rubin's ruling is a matter that must await another day. For the reasons stated I respectfully dissent.