951 So.2d 234 (2006)
Kenneth D. BAILEY
v.
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, Office of State Police.
No. 2005 CA 2474.
Court of Appeal of Louisiana, First Circuit.
December 6, 2006.
Evelyn M. Oubre, Lake Charles, for Plaintiff/Appellant, Kenneth Bailey.
Kathy Williams, Baton Rouge, for Defendant/Appellee, Dept. of Public Safety and Corrections.
William Norfolk, Baton Rouge, Commission for State Police.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY and Judge LEON A. CANNIZZARO, Jr., serving as judges ad hoc by special appointment of the Louisiana Supreme Court).
LEON A. CANNIZZARO, JR., Judge Ad Hoc.
This is an appeal by the plaintiff, Mr. Kenneth D. Bailey, from a decision rendered by the State Police Commission ("the Commission") upholding his termination by the Department of Public Safety and Corrections, Office of State Police (State Police). We affirm.

FACTS AND PROCEDURAL HISTORY
Mr. Bailey had been employed by the State Police for twenty-four years and eleven months and was serving with permanent status as a sergeant, when he was terminated on April 26, 2004. In the termination letter from Louisiana State Police Superintendent Henry Whitehorn, Mr. Bailey was advised that his termination was based on conduct in violation of the following Louisiana State Police Policy and Procedure Rules: 01-02.05, Conduct Unbecoming of an Officer[1]; 01-02.07, Badge of Office[2]; 01-02.04, Conformance to Laws[3]; 01-02.18, Department Vehicles[4]; *237 04-03.02, Vehicle Usage Limitations and Requirements[5]; 04-03.03, Vehicle Off-Duty Use[6]; 01-02.16, False Statements[7]; and, 01-02.29, Use of Intoxicants[8].
On the evening of January 23, 2004, after attending a training seminar on terrorism, Mr. Bailey departed Meridian, Mississippi, and began traveling to his home in Lake Charles, Louisiana, driving an unmarked Louisiana State Police vehicle that had been assigned to him. At about 2:22 a.m., on the morning of January 24, 2004, Sergeant Tim Gilland and Reserve Deputy Geoff Landry of the Calcasieu Parish Sheriff's Office observed Mr. Bailey run a red light at the intersection of La. Highway 27 and La. Highway 12 in DeQuincy, Louisiana. The officers made a U-turn and followed him. While in pursuit, they saw him cross the centerline of La. Highway 12 into the path of oncoming traffic and run onto the shoulder of the road. They then activated their police unit's blue siren lights to initiate a traffic stop.
Mr. Bailey continued traveling east on La. Highway 12 and eventually turned into the parking lot of a store, where he stopped and activated the strobe lights of the state police vehicle. Mr. Bailey exited the vehicle, produced his license and identified himself as a State Police trooper. Noticing that Mr. Bailey was unsteady on his feet, had fumbled for his wallet, and had an odor of alcohol on his breath, the *238 officers decided to conduct standard field sobriety tests on him. Meanwhile, Sgt. Gilland contacted Louisiana State Police Troop D to advise Mr. Bailey's supervisor of the investigatory stop. In a tape recording of the stop, Mr. Bailey is heard telling Sgt. Gilland, "Please help me hang onto my job. If you do what you're going to do, I've lost my job." Mr. Bailey further states, "All I am asking for is if you continue what you have started, I've lost my job, I've lost my retirement."
After Mr. Bailey submitted to the field sobriety tests, the results of which indicated extreme impairment, Sgt. Gilland arrested him for operating a vehicle while intoxicated and careless operation of a vehicle, violations of La. R.S. 14:98[9] and La. R.S. 32:58[10], respectively. The officers then transported Mr. Bailey to the DeQuincy Police Department station, where he voluntarily submitted to the Intoxilyzer 5000 breath test. Mr. Bailey's blood alcohol concentration registered .152%. Upon further questioning by Sgt Gilland, Mr. Bailey denied that he had been drinking but claimed he had consumed 16 ounces of Nyquil, an over the counter liquid cold medicine, after leaving Mississippi. In the meantime, Troop D had dispatched State Police Lieutenant Michael Field to the DeQuincy Police Department station after learning of Mr. Bailey's arrest. Mr. Bailey was later released on his own recognizance and Lt. Field transported him home.
Also present at the police station when Mr. Bailey was brought in were DeQuincy Police Department Sergeant John C. Brown and Corporal Cody Landry. In a follow-up investigation by the State Police, Sgt. Brown, Cpl. Landry and Lt. Field told State Police investigator Lieutenant Marcel Poullard that they smelled an odor of alcohol on Mr. Bailey's breath, his speech was slurred, and his gait unsteady.
On February 4, 2004, as part of the follow-up investigation, Lt. Poullard and Lt. George Dean interviewed Mr. Bailey. In a taped recording of the interview, Mr. Bailey told the investigators that he had not consumed any alcohol on the evening/morning in question but did take 16 ounces of Nyquil. He told them that he had stopped and vomited several times on his way home from Mississippi. Mr. Bailey also said that he was allowed to enter the restroom at the DeQuincy Police Department station, where he again vomited.
After the initial interview concluded, Mr. Bailey engaged in further discussions with the investigators. In those discussions, he admitted that he had not been "entirely truthful" and wanted to set the record straight. After restarting the tape recorder, Mr. Bailey told Lt. Poullard and Lt. Dean that he had not been truthful and that on the night/morning of his arrest, in addition to taking the 16 ounces of Nyquil, he had consumed approximately 6 to 8 ounces of "straight" Crown Royal whiskey over a period of two to three hours at the Iron Horse Bar in DeQuincy. He also told the investigators that he had lied about consuming the whiskey because he did not *239 want to get the bar owner and bar tender in trouble. Mr. Bailey claimed that he knew they would never admit to serving him any alcoholic beverages.
In conjunction with the State Police investigation, Mr. Bailey had to provide Lt. Poullard with a written statement regarding his arrest. In his statement, Mr. Bailey acknowledged that he had taken Nyquil and Advil, an over the counter pain reliever, but failed to mention that he had stopped at the Iron Horse Bar and consumed whiskey. He claimed that he ended up in DeQuincy when he inadvertently exited La. Highway 28 west from U.S. Highway 165 and turned at the wrong intersection.
In addition to the aforementioned facts, Supt. Whitehorn noted four prior disciplinary actions taken against Mr. Bailey in the termination letter. These included: a twelve (12) hour suspension in April 1983 for failing to obey a direct order and failing to submit a report relative to a DWI arrest he had made; a twelve (12) hour suspension in September 1990 for failing to appear before a grand jury after being subpoenaed; a thirty (30) day suspension in January 1999 for giving surveillance photographs to a casino employee and for fraternization with a casino employee; and, a thirty (30) day suspension in July 1999 for being involved in a single car accident while driving under the influence of alcohol.
Mr. Bailey appealed his termination to the Commission, contesting the reported observations of the arresting officers and the statements allegedly made by him at the time of his arrest. Mr. Bailey denied that he was intoxicated and challenged the results of the field sobriety test and breathalyzer test. He also claimed that he was coerced into making a statement that he had consumed alcohol on the late night/early morning in question in order to retain his retirement benefits. While Mr. Bailey's appeal to the Commission was pending but prior to the hearing, he was tried on August 5, 2004 in a judge trial in the Fourteenth (14th) Judicial District Court for the Parish of Calcasieu and acquitted of the charge of driving while intoxicated.
Following a three-day public hearing, the Commission upheld Mr. Bailey's termination. The Commission found that on the night/early morning of his arrest Mr. Bailey had operated the state police vehicle in a careless, reckless and dangerous manner and was greatly impaired due to his consumption of alcoholic beverages. The Commission concluded that the State Police had ample grounds to terminate Mr. Bailey's employment given his four prior disciplinary infractions; his reckless operation of a state police vehicle; his consumption of alcohol while driving; his false and misleading statements to the law enforcement officers during the investigation; and the use of his status as a State Police officer in an attempt to influence the outcome of the traffic stop.
Mr. Bailey appealed the Commission's decision to this Court.

ASSIGNMENTS OF ERROR
Mr. Bailey asserts the following assignments of error on appeal.
(1) The Commission, an administrative agency, erred in superseding the authority of the Fourteenth (14th) Judicial District Court.
(2) Mr. Bailey's termination was overly severe and used to thwart his right to sue the State Police for conduct committed by the State Police in violation of his rights.

LAW AND DISCUSSION
In Department of Public Safety and Corrections, Office of State Police v. Mensman, *240 95-1950, p. 3-4 (La.4/8/96), 671 So.2d 319, 321, the Louisiana Supreme Court, adopting a recitation of applicable legal principles previously set forth by this Court stated:
An employee who has gained permanent status in the classified state police service cannot be subjected to disciplinary action by his employer except for cause expressed in writing. La. Const. art. X, § 46(A). Id. Such an employee may appeal from any disciplinary action to the Commission, and the burden of proof on such an appeal, as to the facts, is on the appointing authority. Id.

The Commission's authority to "hear and decide" disciplinary cases (La. Const. art. X, § 50) includes a duty to decide independently from the facts presented whether the appointing authority has good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the dereliction (cause). See Walters v. Department of Police of New Orleans, 454 So.2d 106, 113 (La.1984). In reviewing the Commission's findings of fact, a court should not reverse or modify such a finding unless it is clearly wrong or manifestly erroneous. See Id. at 114. Moreover, in judging the Commission's exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the reviewing court should not modify the Commission's order unless it is arbitrary, capricious or characterized by an abuse of discretion. See Id.

"Cause" for dismissal of a person who has gained permanent status in the classified civil service has been interpreted to include conduct prejudicial to the public service in which the employee in question is engaged or detrimental to its efficient operation. Walters v. Department of Police of New Orleans, 454 So.2d at 113. Dismissal from permanent employment is obviously the most extreme from of disciplinary action that can be taken against a classified state employee; thus, cause that may justify some other lesser form of disciplinary action may not justify a dismissal. Appeal of Kennedy, 442 So.2d 566, 569 (La.App. 1st Cir.1983).
Mr. Bailey argues in his first assignment of error that the Commission had no basis to uphold his termination in light of his acquittal on the DWI charge by the Fourteenth Judicial District Court. He contends that the violations of the Louisiana State Police Policy and Procedure Rules alleged by the State Police were based solely on the DWI charge, and because he was acquitted, the violation cannot be used to support his termination. In upholding the termination, Mr. Bailey contends, the Commission superseded the district court's authority.
This Court has previously held that an acquittal on a criminal charge does not preclude a civil service disciplinary action based on the same set of facts. See Department of Public Safety and Corrections v. Hooker, 558 So.2d 676, 678 (La.App. 1st Cir.1990). Moreover, unlike a criminal proceeding in which the state must prove beyond a reasonable doubt all the elements of the charged crime, the appointing authority in an administrative proceeding need only prove by a preponderance of the evidence that the complained of action occurred and that it impaired the efficient operation of the public service. Walters v. Department of Police of New Orleans, 454 So.2d 106, 113 (La.1984).
The Commission correctly acknowledged that it was not their role to determine whether Mr. Bailey was guilty or innocent "as to the crime of driving while intoxicated" *241 and that "[Mr. Bailey's] acquittal, for whatever reason, by the Court in Calcasieu Parish of DWI, is interesting but certainly not dispositive of his disciplinary action before this tribunal." The Commission concluded that the State Police presented sufficient evidence to support its claim that Mr. Bailey had operated a department vehicle while having a blood alcohol concentration level of .152%, almost twice the legal limit and, in doing so, jeopardized the public's safety. Based on the testimony of Mr. Tommy Heil, a breath analysis instructor specialist for the State Police, the Commission found that the Intoxilyzer 5000 machine used on Mr. Bailey was certified and operating properly at the time of the test. The Commission also considered the testimony of Mr. John Ricca, an employee of the State Police Crime Lab who testified as an expert in ethyl alcohol metabolism analysis. According to Mr. Ricca, the ethyl alcohol found in Nyquil was the same as that found in whiskey, but Mr. Bailey would have had to consume four and one-half bottles of Nyquil to register the .152% reading on the Intoxilyzer 5000 breath test. Thus, the Commission determined Mr. Bailey's intoxication at the time of his arrest resulted from his consumption of whiskey, not Nyquil.
The Commission found that the testimony of the witnesses called by the State Police demonstrated that Mr. Bailey exhibited "classic signs" of intoxication at the time of his arrest, including slurred speech, the odor of alcohol on his breath, and an unsteady gait. Notably, the Commission concluded that the testimony of the arresting officers, Sgt. Gilland and Deputy Landry, and that of the other law enforcement officers was "candid, consistent, and logical" while Mr. Bailey's was "inconsistent to the extreme, consisting of different versions of the events depending on his audience." Specifically, the Commission found the sequence of events leading to the traffic stop and Mr. Bailey's arrest were in dispute "largely because of the numerous, conflicting versions of those events given by [Mr. Bailey] in his written and recorded statements and his testimony before the Commission." The Commission emphasized that Mr. Bailey testified before them that he had only consumed two diet Cokes at the Iron Horse Bar, contradicting his earlier written and oral statements, yet he never called any witness from the bar to corroborate his testimony. His failure to do so, the Commission concluded, created a presumption that the testimony from any such witness would have been adverse to his claim.
Furthermore, to accept Mr. Bailey's argument that the Commission should be bound by the judgment of the Fourteenth (14th) Judicial District Court acquitting him of the DWI charge would effectively ignore the fact that his termination was based on misconduct other than his DWI arrest and reckless operation of a vehicle. The State Police submitted ample evidence to the Commission that demonstrated Mr. Bailey violated Louisiana State Police Policy and Procedure Rules not directly related to the DWI arrest. Based on the testimony and documentary evidence, the Commission determined that Mr. Bailey made a false statement in his written statement provided to Lt. Poullard shortly after his arrest, and that he made false and misleading statements to the other law enforcement officers investigating the incident, all in violation of Louisiana State Police Policy and Procedure Rule 01-02.16.
Additionally, the Commission determined that when Mr. Bailey produced his State Police badge and pleaded with the arresting officers "to, in effect, stop processing his case as a DWI," he violated Louisiana State Police Policy and Procedure Rules 01-02.05, relative to conduct unbecoming of an officer, and 01-02.07, by *242 using his State Police badge for the purpose of avoiding the consequences of illegal acts.
After reviewing the evidence in the record, we find the State Police had sufficient grounds to terminate Mr. Bailey. Although Mr. Bailey was acquitted of the DWI charge, he knowingly lied to both the arresting officers and State Police investigators, misused his State Police badge, and had four prior disciplinary measures imposed on him for misconduct. Collectively, these infractions clearly support the disciplinary action taken by the State Police in terminating Mr. Bailey and the Commission's decision to uphold the termination. We find no merit to the first assignment of error.
As to the second assignment of error, Mr. Bailey argues that the Commission's ruling upholding his termination from employment was arbitrary, capricious and characterized by an abuse of discretion. He contends that Supt. Whitehorn acted hastily in terminating him before the criminal prosecution on the DWI charge had concluded. Mr. Bailey points out that he had been employed by the State Police for twenty-four years and eleven months and, during that time, had received several commendations and meritorious service certificates for his job performance. He claims that Supt. Whitehorn had agreed that he would not pursue the disciplinary action and would allow him to remain on the force using his annual leave time until his eligible retirement date if he would retire on that date. Mr. Bailey asserts that Supt. Whitehorn breached that agreement by pursuing the disciplinary action. He also contends that Supt. Whitehorn terminated him to prevent him from suing the State Police for violating his rights.
We find no merit to Mr. Bailey's claim that Supt. Whitehorn breached an agreement with him to not pursue the disciplinary action. Supt. Whitehorn testified before the Commission that after sending Mr. Bailey notice of the intended termination, he responded, requesting that he not be terminated but instead be allowed to use his annual leave time until his retirement date and then retire. Supt. Whitehorn said he considered the request and was inclined to grant it considering Mr. Bailey's length of service. However, he had one condition. Explaining that Mr. Bailey had threatened to sue the State Police as a result of the incident, Supt. Whitehorn informed him that he would honor his retirement request only if Mr. Bailey would agree to forego any legal action against the State Police. Supt. Whitehorn testified that Mr. Bailey initially agreed to those terms, but shortly thereafter sent a letter to the State Police stating, "based on the advice of his attorney they felt that they would win the criminal case against him and that, he was no longer going to sign any documents regarding retirement." In view of Mr. Bailey's decision to not retire, Supt. Whitehorn testified he had no option but to pursue the disciplinary action considering the severity of Mr. Bailey's misconduct.
Mr. Bailey argued to the Commission that the condition placed on his retirement request by Supt. Whitehorn, i.e., no legal action against the State Police, was "capricious and dishonorable" and violated his employment rights. The Commission, however, disagreed, stating,
It would make no sense to permit [Mr. Bailey] to use leave so that he could retire and escape termination without requiring that he forego any claims against the Department. As noted by the [a]ttorney for [the] Louisiana State Police in her post hearing memorandum, the Department had no obligation to offer [Mr. Bailey] the opportunity to remain an employee until his retirement *243 date. However, it did so and [Mr. Bailey] rejected that offer.
We also find no merit to Mr. Bailey's claim that Supt. Whitehorn terminated him to "thwart" his right to sue the State Police for violating his rights. The termination in no way precludes Mr. Bailey from filing a suit against the State Police if he chooses to do so.
Finally, we consider whether the Commission's ruling upholding Mr. Bailey's employment termination was arbitrary, capricious or characterized by an abuse of discretion.
A conclusion of a public body is "capricious" when the conclusion has no substantial evidence to support it or the conclusion is contrary to the substantiated competent evidence. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. Khosravanipour v. Department of Transportation and Development, 93-2041, 93-2045, p. 8 (La. App. 1 Cir. 10/7/94), 644 So.2d 823, 827.
In Antoine v. Department of Public Safety and Corrections, 95-2558 (La.App. 1 Cir. 9/27/99), 681 So.2d 1282, this Court affirmed the Commission's decision to uphold the termination of a trooper's employment where the trooper had appeared for duty while under the influence of intoxicants and drove his unit in that condition. The Court determined that the Commission did not exercise its authority unlawfully in concluding that the punishment was commensurate with the cause upon which the disciplinary action was based. The Court concluded that the Commission's decision was not arbitrary, capricious or characterized by an abuse of discretion, even in light of the mitigating circumstances set forth by Mr. Antoine, including the fact that he was an alcoholic and that subsequent to the incident which prompted his removal, he had received and continued to receive treatment for his condition. The Commission stated that Mr. Antoine, while on duty and entrusted with the enforcement of the law, was, in fact, engaged in law enforcement activities involving direct interaction with the public while noticeably under the influence of alcohol. His actions, the Commission found, not only had the potential of damaging the public's perception of the State Police, but also were extremely dangerous and could have been fatal to himself and others. The Court also considered, as did the Commission, Mr. Antoine's sixteen years of experience and the testimony that he was a "`salvageable employee.'" Considering the severity of the infraction and the record as a whole, the Court was unable to say that the Commission's decision to affirm the termination was arbitrary, capricious or an abuse of discretion.
Although Mr. Antoine, unlike Mr. Bailey, was on duty at the time of the complained of behavior, Mr. Bailey's situation is similar in that at the time of his arrest, he was driving a state police vehicle, and as such, had an obligation to enforce and obey the law. Mr. Bailey's reckless operation of a state police vehicle while intoxicated put him and others in extreme danger. His actions also exposed the State of Louisiana to potential liability. In addition, Mr. Bailey, on four previous occasions, had been disciplined. The last disciplinary action, taken in July 1999, arose out of a vehicular accident in which Bailey was driving with a blood alcohol concentration of .11%. Considering the four prior infractions, one involving alcohol, and his actions at the time of his arrest and during the follow up investigation, the Commission concluded the State Police had ample grounds to terminate Mr. Bailey. Based on the evidence in the record, we do not find the Commission's decision to uphold Mr. Bailey's employment termination was arbitrary, capricious or *244 characterized by an abuse of discretion. We agree with the Commission's conclusion that Mr. Bailey's termination was warranted and commensurate with his infractions.

CONCLUSION
Accordingly, for the reasons set forth herein, we affirm the decision of the Commission, upholding the termination of employment of Mr. Kenneth D. Bailey by the Department of Public Safety and Corrections, Office of State Police.
AFFIRMED.
NOTES
[1] 01-02.05 CONDUCT UNBECOMING OF AN OFFICER

A commissioned officer shall conduct himself at all times, both on and off-duty, in such a manner as to reflect most favorably on himself and the Department.
Unbecoming conduct is defined as conduct which:
 Brings the Department or any of its subdivisions into disrepute;
 Reflects discredit upon the officer as a member of the Department;
 Impairs the operations or efficiency of the Department, the officer, or state service;
 Detrimentally affects the morale of the Department's personnel; or
 May unreasonably be expected to destroy public respect for State Police Officers and/or confidence in the Office of State Police.
[2] 01-02.07 BADGE OF OFFICE

The term "badge of office" shall include the identification/commission card, badge, official position, title, uniform or any other tangible or intangible thing by which it can be construed that the concept "Louisiana State Police" is being interjected . . .
A commissioned officer shall not use his badge of office for the purpose of avoiding the consequences of illegal acts.
[3] 01-02.04 CONFORMANCE TO LAWS

A commissioned officer shall conform to, and abide by, the laws of the United States, the State of Louisiana, all other states of the United States and subdivisions thereof.
[4] 01-02.18 DEPARTMENT VEHICLES

A commissioned officer shall operate any vehicle in a careful and prudent manner and obey all laws of the State pertaining thereto.
A commissioned officer shall at all times set a proper example for other persons by his proper operation of vehicles.
[5] 04-03.02 VEHICLE USAGE LIMITATIONS AND REQUIREMENTS

Personnel shall drive all Department vehicles with prudence and care, mindful that abuse, misuse or recklessness reduces the operating efficiency of the Department's fleet.
Personnel shall not operate or use a Department vehicle in any manner which might bring discredit to the employee or the Department . . .
Personnel shall observe all traffic laws and agency regulations when operating Department vehicles. Although officers are granted specific exemptions from the Highway Regulatory Act (LRS 32:24), they are not relieved of the responsibility to operate vehicles with due regard for the safety of all persons. Employees shall drive courteously and with proper regard for other motorists . . .
No employee shall operate a Department vehicle after consuming alcoholic beverages unless an officer must do so as part of an official agency investigation. Only those officers who are working in an official, undercover capacity shall be given the latitude to consume alcoholic beverages during the course of an investigation . . .
Unauthorized operation of a fleet vehicle after consumption of alcoholic beverages shall be prima facie evidence of intent to violate this order.
[6] 04-03.03 VEHICLE OFF-DUTY USE

Officers shall be held strictly accountable for their personal appearance, conduct and decorum while operating Department vehicles . . .
Officers are subject to the same rules and regulations off-duty as they are while on duty with regard to the operation and care of their assigned units.
[7] 01-02.16 FALSE STATEMENTS

A commissioned officer shall make no statement or falsify any written report to a superior officer knowing such statement to be incorrect or misleading.
No commissioned officer shall willfully and/or intentionally withhold any information from a report or statement, knowing such information to be relevant to the report or statement.
[8] 01-02.29 USE OF INTOXICANTS

Off-duty: A commissioned officer while off-duty shall not consume alcoholic beverages to the extent that it results in public behavior which could reasonably be expected to destroy public respect and/or confidence in the officer and/or the Department or would render a commissioned officer unfit to report for his next regular tour-of-duty.
[9] La. R.S. 14:98 provides, in pertinent part:

A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
(a) The operator is under the influence of alcoholic beverages; or
(b) The operator's blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood; . . .
[10] La. R.S. 32:58 provides:

Any person operating a motor vehicle on the public roads of this state shall drive in a careful and prudent manner, so as not to endanger the life, limb, or property of any person. Failure to drive in such a manner shall constitute careless operation.