# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2019 CW 0164

## In re Appeal of Emerson Jackson and Travis Wheeler

Judgment Rendered: _____JAN 0 2 2020_____

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket Number 659565

Honorable Wilson Fields, Judge Presiding

\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Anderson O. Dotson, III<br>Kim L. Brooks<br>Baton Rouge, LA | Counsel for Plaintiff/Appellant<br>City of Baton Rouge and Parish of<br>East Baton Rouge |
| Brandon Kyle Kershaw<br>Baton Rouge, LA | Counsel for Defendants/Appellees<br>Emerson Jackson and<br>Travis Wheeler |
| Floyd J. Falcon, Jr.<br>Baton Rouge, LA | Counsel for Defendant/Appellant<br>Municipal Fire and Police Civil<br>Service Board |

\*\*\*\*\*\*\*\*\*\*\*\*\*

## BEFORE: WHIPPLE, C.J., GUIDRY, AND CRAIN[1], JJ.

---

[1]Justice Will Crain is serving as judge *ad hoc* by special appointment of the Louisiana Supreme Court.

**WHIPPLE, C.J.**

The City of Baton Rouge and Parish of East Baton Rouge (the City) appeal a judgment of the district court, which reversed the decision of the Municipal Fire and Police Civil Service Board (the Board), upholding the termination of employment of Emerson Jackson (Jackson) and Travis Wheeler (Wheeler) from the Baton Rouge Police Department. After reviewing the facts and applicable law, we convert the appeal to an application for supervisory writs, and grant the writ.[2]

## FACTS AND PROCEDURAL HISTORY

On March 26, 2014, Jackson and Wheeler, both officers with the Baton Rouge Police Department, received pre-termination letters as a result of an incident that allegedly occurred on February 4, 2014. The letters summarized events that took place that evening, which resulted in a complaint of sexual assault being made against the officers, and triggered an internal investigation.

The letters provided as follows. At approximately 9:00 p.m., Jackson, Wheeler, and a third officer not a party to this proceeding, entered the BREC Park on Old Hammond Highway where they encountered a young man and woman in a vehicle. The officers asked the occupants of the vehicle to exit, and separated them for questioning. Ultimately, the young man was told to leave, and he did so on foot; the young woman remained with the officers and her interrogation continued. The third officer allegedly threatened the young woman with vehicle impoundment and the arrest of her mother if she did not agree to have sex with

---

[2]In Miazza v. City of Mandeville, et al., 2010-0304 (La. 5/21/10), 34 So. 3d 849 (per curiam), the Louisiana supreme court stated that when, as in this case, the legislature has vested appellate jurisdiction in the district court, the court of appeal lacks appellate jurisdiction, and should convert the appeal to an application for supervisory writs. The supreme court gave a similar directive to this court in Meiners v. St. Tammany Fire Protection District # 4 Board of Commissioners, 2010-0912 (La. 6/25/10), 38 So. 3d 359. Since these cases, this court has followed this procedure in several other cases, including Dwyer v. West Feliciana Fire Protection District # 1 Civil Service Board, 2011-1096 (La. App. 1st Cir. 12/21/11), 80 So. 3d 1229; Baton Rouge Police Department v. O'Malley, 2010-1386 (La. App. 1st Cir. 3/25/11), 64 So. 3d 773; Beck v. City of Baker, 2011-0803 (La. App. 1st Cir. 9/10/12), 102 So. 3d 887, writ denied, 2012-2455 (La. 1/11/13), 107 So. 3d 617; and Sanders v. City of Mandeville Municipal Police Department, 2018-0125 (La. App. 1st Cir. 11/2/18), 2018 WL 5792011 (unpublished).

him, and under duress she agreed. Jackson and Wheeler were present during this time, and Jackson even positioned himself to see what occurred between the victim and the other officer. The young man returned to the park after receiving an explicit text message from the young woman about what was to transpire, and upon re-entering the park, Jackson and Wheeler stopped him before he made it to the parked vehicles. The young man was told to leave the park or face arrest.

The letters further specifically noted that none of the officers had their in-car cameras on during the time of the incident. The letters concluded that Jackson and Wheeler had violated certain policies provided in the Department's Policies and Procedures Manual Disciplinary Code, Section XII, "Disciplinary Articles," mainly subsections 0:0, 2:10, 3:17 and 3:23.[3] The letters further stated that Wheeler and Jackson's conduct also constituted reason for which disciplinary

---

[3]Pursuant to the pre-termination letters, the department policies involved provided:

0:0 Violators Subject to Disciplinary Action

All members of the Baton Rouge Police Department, regardless of rank or assignment, are subject to disciplinary action for any violation of the rules, procedures, or departmental policy contained herein or in other procedural Manuals issued by the Department. It is not necessary the violation be intentional, but may be by omission or failure.

2:10 Conduct Unbecoming an Officer

Every member of the Department, whether on or off duty, in an official capacity, must conduct himself at all times in such a manner as to set a good example for others with whom he may come in contact. He shall in no way, through actions or neglect, bring dishonor or disgrace upon himself or the Baton Rouge Police Department.

3:17 Carrying Out Orders

It is incumbent on every member of the Department to observe and give effect to the policies of the Department. Members of the Department are required to obey any standing or general order, abide by all policies and procedures and promptly carry out any lawful order of a superior, including any order relayed from a superior by an employee of the same or lesser rank, whether issued verbally, in writing or by telecommunications (2-way radio, phone, fax, digital communications). If a member is issued an order that is in conflict with departmental policy or an order previously issued by a superior, this fact shall be brought to the attention of the supervisor issuing the order. If the supervisor fails to resolve the conflict, the order shall stand and the responsibility shall be his. Officers are not required to obey unlawful orders.

3:23 Truthfulness

Every member of the Department is required to be truthful except while conducting investigations that require surreptitiousness.

3

action may be taken under the provisions of LSA-R.S. 33:2500(A)(1), (2), and (3). These letters also provided notice for a pre-termination hearing, and indicated the sixty-day deadline for the administrative investigation was April 5, 2014.

On November 12, 2014, both Jackson and Wheeler received correspondence notifying them that they were being placed on paid administrative leave effective November 13, 2014, until further notice. On November 13, 2014, both Jackson and Wheeler again received pre-termination letters arising out of the February 4, 2014 incident, which were almost identical to the letters received on March 26, 2014, except that the new letters contained one additional fact paragraph which provided:

> Further, on November 12, 2014 you were indicted by the Grand Jury of the Parish of East Baton Rouge, State of Louisiana, alleging that you committed the offense of abuse of office, violating Louisiana [R]evised [S]tatutes Title 14, Article 134.3.

Additionally, these pre-termination letters added another department policy violation found in Subsection 3:22, entitled, "Violation of Laws," which provides "[n]o member will willfully or by neglect or omission violate any Federal, State or City ordinance or statu[t]e." The letters concluded by providing that a pre-termination hearing would be held the following day, November 14, 2014.

Neither Jackson nor Wheeler appeared at the November 14, 2014 pre-termination hearing, and after reviewing the internal investigations report, Chief of Police Carl Dabadie made the decision to terminate the officers' employment. Jackson and Wheeler received notice of their terminations in correspondence dated November 17, 2014, which was nearly identical to the November 13, 2014 pre-termination letters, except to say that their employment had been terminated for the reasons set forth in the previous letters.

Both officers appealed their terminations to the Board. In their petitions, Jackson and Wheeler alleged that the decision to terminate their employment was

4

not made in good faith or for cause, and was procedurally defective. They further denied the allegations made against them in their termination letters.

The Board conducted a full evidentiary hearing on June 29, 2017 and June 30, 2017.[4] After narrowing the scope of the hearing, due to procedural issues, only evidence regarding whether the officers "violated the law" was presented. The Board proceeded to hear testimony from nine witnesses, and had the testimony of another read into the record.

The Board also received several exhibits into evidence, including the cell phone records of the three officers involved, the victim, and the young man, and an electronic timeline created, in part, from all of these records, for their consideration. Prior to ruling, one board member stated that she believed, based on the information at his disposal, "[the Chief] did act in good faith and for just cause" in terminating Jackson and Wheeler's employment and made a motion to uphold the terminations. A second board member then stated,

> I recognized that [counsel for Jackson and Wheeler] indicated in his summation that there's been a profound effect upon these two gentlemen's lives, but things like that happen in the real world. But I do believe something happened in that park and that there's a [cover-up] being held or being perpetrated.
>
> Perhaps there [were] some inconsistencies in the statements of the two young people, but I think there were also inconsistencies in the statements of the other witnesses, especially the two officers, and based on that, I think the Chief did make a decision that he thought was correct based on the information that he had. And for that reason, I will second the motion.

The Board determined, by a four-to-one vote, to uphold the terminations of Jackson and Wheeler.

Jackson and Wheeler filed a petition for judicial review of the Board's decision in the Nineteenth Judicial District Court on July 14, 2017. In the appeal,

---

[4]We note that prior to this hearing, both Jackson and Wheeler were acquitted of the criminal charges of abuse of office by a jury on January 28, 2017.

the officers alleged that the Board's decision was not made in good faith and for cause as it was contrary to the evidence produced at the hearing of this matter and the applicable law, urging that they could not be disciplined for criminal charges of which they were acquitted.

On March 7, 2018, the district court signed a judgment, remanding the matter back to the Board and ordering "the Board to give the accuseds proper notice as it relates to Section 2501, the ten (10) day notice, to let them know the time, place and the date of hearing;" and further ordering "the Board to consider the verdict of the jury that was rendered in the criminal trial, and for the Board to articulate what laws Emerson Jackson or Travis Wheeler violated and the reasons for the Board's decision. If the Board determines that they should uphold the [C]hief's termination, then articulate what laws have been violated."

Upon receiving the remand order from the district court, the Board discussed the court's instructions and moved to formulate a written response, incorporating those items requested by the court and discussed by the Board. The Board provided to the district court a "notice" asserting that it not only gave Jackson and Wheeler ten days' notice of their hearing, but in fact gave them thirty days advance notice, as it granted a continuance for the hearing on May 30, 2017, and scheduled the hearing for June 29, 2017.

The Board also issued "findings" pursuant to the second part of the district court's judgment, which included:

> The appeal hearing proceeded on the charge of 3:22 Violation of Laws and Violations of [LSA-]R.S. 33:2500(A)(1)(2) and (3)...
>
> Three police units arrived at [the] BREC [P]ark on Old Hammond Highway about the same time[, two of which were] driven by Officers...Wheeler and Jackson.
>
> A civilian vehicle was parked at this same BREC [P]ark.
>
> The officers had the male and female occupants of the civilian vehicle exit the vehicle but did not activate their cameras.

6

The officers obtained identification from the two occupants and ran same and the license plate of the car and found no issue.

All three officers were at the park for approximately 45 minutes with no cameras activated.

...[T]he male occupant of the civilian vehicle, after being identified was ordered from the park and left on foot.

[The third officer] got in the back seat of [the victim's] vehicle with her.

Both Wheeler and Jackson were out of their vehicles and were standing in the vicinity of [the victim's] vehicle while [the third officer] was in the back seat of her vehicle with her.

[The victim] texted [the male occupant] that the officer demanded sex.

[The third officer] did not testify at the hearing.

[The male occupant] attempted to return to the park but was stopped by Jackson and Wheeler and threatened with arrest if he did not again leave.

[The victim] was threatened by [the third officer] and forced to have sex with him.

Officers Jackson and Wheeler knew what was transpiring in the victim's vehicle and prevented [the male occupant] from coming to the aid of [the victim] and they failed to intervene on [the victim's] behalf.

Wheeler's testimony that he did not get out of his vehicle and that [the male occupant] left on foot and [the victim] drove away after the identification check was totally unworthy of belief and indicates he was aware of what was happening.

Emerson Jackson's testimony before the Board was not credible.

Travis Wheeler's testimony before the Board was not credible. [The victim's] testimony of actions of [the third officer] and the actions/inactions of Jackson and Wheeler were credible.

[The male occupant's] testimony relative to his being sent away, his being kept away and his attempted return [was] credible as was his testimony relative to his communication with [the victim] during and after the ... incident.

[The male occupant and the victim] left the park to report the incident. They initially attempted to report it to the first officer they

7

encountered. That officer referred them to the Third District. [The victim] was interviewed and examined at the hospital.

Multiple calls and in-person contact transpired between Wheeler and Jackson in the hours following the incident in the park.

The Board believed that Jackson and Wheeler were accessories to [the third officer's] rape or sexual battery of [the victim].

The Board believed that Jackson and Wheeler were accessories to [the third officer's] false imprisonment of [the victim].

The Board believed that Jackson and Wheeler were guilty of Malfeasance in Office and failing to protect [the victim].

The Board believed that Jackson and Wheeler were guilty of Malfeasance in Office in ordering [the male occupant] away from the area leaving [the victim] alone with [the third officer] and then refusing to allow [the male occupant] to return to the scene in order to aid [the victim].

The Board believed that Jackson and Wheeler demonstrated unwillingness or failure to perform their duties in a satisfactory manner; were guilty of deliberate omissions to the performance of their duty; and they committed multiple acts to the prejudice of departmental service contrary to the public's interest.

The Board considered the jury finding in the criminal trial but determined it was not bound to the same conclusion based on the differing standards of review and the testimony of the officers which was not presented in the criminal trial.

The Board voted 4-1 that the appointing authority acted in good faith and for cause in terminating both Jackson and Wheeler.

Upon receiving these findings, along with supplemental memoranda from the parties, the district court held another hearing on Jackson and Wheeler's petition for judicial review on October 15, 2018. After hearing the parties' arguments, the district court stated in part:

This matter came to the court on judicial review in which…the Board upheld the Chief's termination of Mr. Wheeler and Mr. Jackson. The court reviewed the matter and remanded the matter back to the Board for them to take into consideration the acquittal of Mr. Wheeler and Mr. Jackson. The Board did that and also submitted its findings as to upholding the Chief's termination of the two individuals. After reading the Board's findings and having further discussion with both counsel in this matter, the court has decided that the Board acted outside of the scope of their authority.

8

***

In the termination letter that the Chief gave to both individuals, the court finds that that letter in itself did not give the individuals enough notice to know what they were – had to defend against. Specifically, what the Board's findings was on 3:22 Violation of Laws, no member will willfully or by neglect or omission violate any federal, state or city ordinance or statute. The Chief in his letter laid out the fact scenario in which he based his decision on. And the Board itself decided what laws were violated. And the court finds that that is outside of the scope and authority of the Board to determine what laws were violated on their own. The Chief has to let the individuals know in their termination letter what laws were violated and then it[']s the responsibility and duties of the Board to determine whether or not the Chief acted with good cause in terminating the individuals based off that individual law or particular laws, not just saying you can't violate any laws of state, federal or city. So it left the Board in the position of looking at the fact patterns and then determining what laws were violated. And that's where the court finds that the Board is outside of their authority. So therefore, the court is going to reverse the decision of the Board and the terminations due to the fact that they went outside of the scope of their authority.

A judgment reflecting the district court's ruling was signed on December 3, 2018, granting the officers' petition for judicial review and overturning the termination of the officers' employment by the Baton Rouge City Police Department. The City then timely filed this appeal.

## DISCUSSION

The grounds for which a municipal appointing authority may remove or discipline a tenured employee are set forth in LSA-R.S. 33:2500. The pertinent parts of the statute provide that the following constitute "cause" for termination or other disciplinary action and set forth the types of disciplinary action that may be taken, as follows:

> A. The tenure of persons who have been regularly and permanently inducted into positions of the classified service shall be during good behavior. However, the appointing authority may remove any employee from the service, or take such disciplinary action as the circumstances warrant in the manner provided below for any one of the following reasons:

9

(1) Unwillingness or failure to perform the duties of his position in a satisfactory manner.

(2) The deliberate omission of any act that it was his duty to perform.

(3) The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.

Any regular employee in the classified service who feels that he has been discharged or disciplined without just cause may demand a hearing and investigation by the Board to determine the reasonableness of the action. LSA-R.S. 33:2501(A). At such a hearing, the appointing authority must prove by a preponderance of evidence that a legal cause existed for the disciplinary action imposed. Miller v. City of Gonzales, 2015-1008 (La. App. 1st Cir. 8/31/16), 202 So. 3d 1114, 1118. Legal cause for disciplinary action exists if the conduct by the employee impairs the efficiency of the public service in which the employee is engaged. Wopara v. State Employees' Group Benefits Program, 2002-2641 (La. App. 1st Cir. 7/2/03), 859 So. 2d 67, 69.

The Board reviews the appointing authority's decision to take disciplinary action to determine whether the decision was made "in good faith for cause." LSA-R.S. 33:2501(C)(1). The Board may, if the evidence is conclusive, affirm the action of the appointing authority. If it finds that the action was not taken in good faith for cause, the Board shall order the immediate reinstatement or reemployment of such person, or it may modify the discipline imposed. LSA-R.S. 33:2501(C)(1); Landry v. Baton Rouge Police Department, 2008-2289 (La. App. 1st Cir. 5/8/09), 17 So. 3d 991, 994-95. The imposition of disciplinary action against a police officer does not occur in good faith if the appointing authority acted arbitrarily, capriciously, or as the result of prejudice or political expediency. Arbitrary or capricious means the lack of a rational basis for the action taken. Miller, 202 So. 3d at 1118.

10

An employee dissatisfied with the Board's decision may appeal to the district court by filing a petition for judicial review. LSA-R.S. 33:2561(E) & 2501(E)(1). Upon the Board's filing of the complete transcript of its hearing with the district court, the court shall proceed to hear the appeal. LSA-R.S. 33:2501(E)(2). The district court's review of the Board's quasi-judicial administrative decision is an exercise of appellate jurisdiction and does not include a trial *de novo*. Beck, 102 So. 3d at 892. The district court's review is confined to the determination of whether the decision made by the Board was made in good faith for cause. The district court may not substitute its opinion for that of the Board. The district court should accord deference to the Board's factual conclusions and must not overturn them unless they are manifestly erroneous. Likewise, the intermediate appellate court's and Supreme Court's review of a civil service board's findings of fact is limited. Those findings are entitled to the same weight as findings of fact made by a district court and are not to be overturned in the absence of manifest error. St. Tammany Parish Fire Protection District No. 4 v. Picone, 2010-0481 (La. App. 1st Cir. 12/15/10), 53 So. 3d 704, 706; Beck, 102 So. 3d at 893.

In its sole assignment of error, the City contends that the district court used the wrong standard when reviewing the Board's decision. We agree. In reviewing the Board's decision, the district court had before it the full record of the evidentiary hearing upon which it was to determine whether the Board made its decision to uphold the appointing authority's decision to terminate the employment of the officers in good faith and for cause. Instead, the district court remanded the matter back to the Board, ordering it to list the laws the Board believed Jackson and Wheeler had violated. Once the Board complied with the order, the district court ruled that the Board had gone beyond the scope of their authority in doing so.

On review of the record, this court concludes that the Board's findings were based upon substantial and competent evidence, and that the Board's decision to uphold the terminations of Jackson and Wheeler's employment was made in good faith for cause.

At the board hearing, the victim and the young man who was with her testified to the events that were contained in the officers' termination letters. Both testified to driving to the BREC Park and getting into the backseat of the victim's vehicle prior to three police units arriving at the park. Both testified that they exited the vehicle, and were separated, with the young man being questioned by the third officer, and the victim being questioned by Jackson and Wheeler. The victim testified to Wheeler running their drivers' licenses, as well as the license plate of the victim's vehicle. The victim further testified that Jackson and Wheeler joked about what they were going to do to the victim and young man. Both testified that the young man was allowed to leave while the victim was not. The victim testified that she was told by the third officer that he had the "say-so" as to what happened to her that evening, and that she could be free to go if she would first be his "ten minute girlfriend." The victim testified that she sent the young man a text message informing him of what was to transpire, and the young man testified regarding his receiving that message. The young man testified that he attempted to return to the park after receiving the text, but was stopped by Jackson and Wheeler and threatened with arrest if he did not leave. The victim testified that although vaginal sex was initially proposed, the third officer settled for oral sex, during which she saw Jackson come around to see what was happening. After the assault was finished, Wheeler gave her back her identification information and told her she was free to go.

Both the victim and the young man testified that they reunited at the Hammond Aire parking lot after the victim was set free, and attempted to report

12

the incident to the first nearby police officer. That officer told them there was nothing he could do, and advised them to go to the Third District on Coursey to make the complaint.

On cross examination, opposing counsel pointed out several inconsistencies in the victim's statements, arguing that they were material, including that the victim had not always testified that the police had their flashing lights activated when they entered the park; the type of sex that was had; whether a condom was used; whether the offending officer was circumcised; and whether she scratched the offending officer.

Lieutenant Johnny Dunnam (Dunnam), the lead internal affairs (IA) investigator of this case, testified about his investigation and findings. Dunnam stated that after taking the victim's statement, he found it to be consistent with her prior statements, and remained basically consistent. He further testified that the victim positively identified the three officers from a photographic lineup. Dunnam also interviewed Officer Matthew Dunaway, the patrolling officer at Hammond Aire, to whom the victim and young man initially attempted to report the assault. Officer Dunaway confirmed the victim's recollection of their interaction, and that once the victim and young man had left for the Third District, he immediately called Wheeler and told him that a complaint was about to be filed involving officers at the BREC Park. Dunnam testified that he interviewed the three officers involved, all of whom admitted to being in the park that evening. Dunnam stated that all three also admitted to coming into contact with the victim and the young man, but that all three had very different accounts as to which officer did what.

In addition to the interviews, Dunnam accessed the officers' in-car cameras, which he discovered were not on during this incident. He also accessed the GPS trackers or "air cards" in the officers' patrol units, which specifically placed the third officer at BREC Park at the time of the alleged assault, from approximately

13

9:07 p.m. to 9:51 p.m. This fact further corroborated the victim's allegations, as there was an insurance flag on the victim's vehicle, which could be found by running the license plate. After completing his investigation, Dunnam testified that he concluded that the evidence corroborated the victim's allegations. Dunnam further testified that he believed that Jackson, Wheeler, and the third officer had inconsistent stories about what happened that night, not only between each other, but also with what the evidence showed. After interviewing the officers, he felt they were very untruthful during the investigation, and believed Jackson and Wheeler were "covering for" the third officer.

Cindy Carmack (Carmack), a criminal intelligence analyst with the Baton Rouge Police Department, whose duties include assisting detectives at the Department with "workups," finding people, and creating timelines, was called to testify regarding the timeline she had been tasked to create for this case. Some of the important points in the timeline were highlighted during Carmack's testimony as follows:

- 9:06 p.m., the other officer arrived at the BREC Park;

- 9:12 p.m., Wheeler used the ICJIS database to search for the victim's name;

- 9:14 p.m., Wheeler used the ICJIS database to search for the young man's name;

- 9:21 p.m., Wheeler searched for information regarding the vehicle driven by the victim; about that same time, Wheeler also searched the victim's mother's background;

- 9:22 p.m., the young man sent a text to the victim, asking her to let him know what happened;

- 9:27 p.m., the victim sent a text message to the young man advising him the officers wanted to have sex;

- There was no activity on any device until 9:41 p.m. when the victim called the young man, which lasted a few seconds, and precipitated a few phone calls between the two young people;

14

- 9:51 p.m., Officer Dunaway called Wheeler, which call lasted about two minutes;

- 9:53 p.m., Wheeler called Jackson, which call also lasted about two minutes;

- 10:12 p.m., Wheeler received his first phone call from Sargent Kenny Brewer, Wheeler's supervisor at the Third District, which triggered multiple calls between Jackson, Wheeler, and the third officer;

- 10:55 p.m., Brewer called Wheeler once more, this time, the call lasted approximately six minutes;

Excerpts from the testimony of Lieutenant Steve Wilkinson (Wilkinson) were read into the record. Wilkinson's testimony was that the GPS data used was not as precise as the City made it out to be regarding the exact location of the unit being tracked or the time it was at a particular location.

Chief Carl Dabadie testified, explaining that he relied upon the facts in the IA file as well as the indictments to make his determination about the terminations of Jackson and Wheeler, as neither showed up to their pre-termination hearings. At the end of his testimony, Chief Dabadie stated that he believed something happened that evening, and that Jackson and Wheeler were complicit in that activity. He believed that based on the information that was provided to him, Jackson and Wheeler were guilty of violating the laws of Louisiana, the City of Baton Rouge, as well as the United States.

Sargent Kenny Brewer (Brewer) testified that on the night of the alleged incident, he received a phone call from an officer at the Third District regarding a complaint to be made against several officers. After learning that the complainant alleged an assault by officers at a BREC Park, he called Wheeler, because he knew Wheeler was known to patrol BREC Parks. He testified that the victim was very inconsistent in her statement to him. He further testified that he believed that both Jackson and Wheeler were good officers. Brewer admitted that at the time of the complaint, he was not only Jackson and Wheeler's supervisor, but he was also the

union steward for the police officers, and therefore, was "wearing two hats" during the investigation.

On cross examination, it was shown that Brewer had made inconsistent statements regarding what he told Wheeler about the complaint that was filed, and whether he had spoken to Wheeler prior to taking the victim's statement. He was also inconsistent about whether Brewer looked at any text messages the young man attempted to show him to corroborate the victim's complaint.

At the board hearing, Jackson testified that he was assigned to patrol the new headquarters building the evening of February 4, 2014. He testified that he left his post and went to the BREC Park on Old Hammond Highway in order to retrieve a clipboard from Wheeler, and upon arriving at the park, he encountered the two young people as well as Wheeler and the other officer. Jackson testified that because it was cold outside, he sat in his car watching YouTube videos on his phone until the victim drove away. At that point, he retrieved his clipboard and left to return to headquarters when he was contacted by Wheeler and told that he had been ordered to go to the Third District. Jackson also stated that he had not seen the victim and any officer take part in any kind of sexual relations.

On cross examination, Jackson's prior inconsistent statements were highlighted, as he had previously told the IA investigator that he had spoken to the victim when he arrived, which he now said was not true. Moreover, Jackson could not account for what he did in the park, as the mobile data showed that there was no activity on his phone between 8:31 p.m. and 9:53 p.m., other than to say that he sat in his vehicle for an undeterminable amount of time without speaking to anyone.

Wheeler's account of the evening of February 4, 2014 was that after finishing a call, he and the third officer decided to go to the BREC Park to type reports. Upon their arrival, they encountered what appeared to be an abandoned

16

car, but upon closer inspection, they found a young man and woman inside. Wheeler asked for the youths' identifications and proceeded to run the information after separating the two, with the young man standing with the third officer in front of his unit, and the victim standing in front of his. Wheeler stated that after running the drivers' licenses, there was nothing outstanding, and the officers told the victim to leave the park. Wheeler testified that the young man had previously left on foot, because he was worried his girlfriend would find out that he was in the park with the victim.

Wheeler testified he received a phone call from Brewer, asking him whether he had been in the BREC Park that evening, to which Wheeler testified he stated yes, and advised Brewer about the stop that had occurred. Wheeler stated that later, Brewer called him once more, this time telling him that a complaint had been lodged and he, Jackson, and the third officer needed to come to the Third District.

Given the conflicting testimony, the Board was required to make credibility determinations, and did so, concluding the victim's version of events to be credible. Because the evidence submitted into the record supports such a finding, we do not find the Board's factual findings to be manifestly erroneous.

Using this record, the district court was to determine if the Board acted in good faith for cause in upholding the Chief's termination of Jackson and Wheeler's employment. The only claim left before the Board was whether Jackson and Wheeler violated any laws on the evening of February 4, 2014, related to the events of the sexual assault as explained in the November 17, 2014 termination letters, and specifically, whether they had abused their power, which was the charge upon which both men were indicted.

Louisiana Revised Statutes 14:134.3, abuse of office, provides in pertinent part:

17

A. No public officer or public employee shall knowingly and intentionally use the authority of his office or position, directly or indirectly, to compel or coerce any person to provide the public officer, public employee or any other person with anything of apparent present or prospective value when the public officer or employee is not entitled by the nature of his office to the services sought or the object of his demand.

For purposes of Section 14:134.3, the term "anything of value" includes sex and loss of simple human dignity. See State v. Seaton, 47,741 (La. App. 2nd Cir. 4/10/13), 112 So. 3d 1011, 1020."

Jackson and Wheeler were employed as police officers at the time of the incident, clearly qualifying them as public officers or employees. Jackson and Wheeler came into contact with the victim through their job duties in generally patrolling their district. After running the victim and young man's drivers' licenses, as well as the license plate of the victim's vehicle, the officers learned that there was a flag on the vehicle due to an insurance issue. Rather than issuing a citation, or simply letting the two young people go, the officers, using their authority, separated the young man from the woman, and told the woman she would only be released if she agreed to have sex. Rather than helping the young woman, Jackson and Wheeler stood by, and prevented the young man from helping the young woman while she was sexually assaulted by the third officer.

The record supports a finding that Jackson and Wheeler knowingly and intentionally used the authority of their office to coerce the victim to provide sex to the third officer, which is a thing of value that he was not entitled to receive by the nature of his office. See Seaton, 112 So. 3d at 1020. Therefore, we find no error in the Board's finding that the appointing authority acted in good faith and for cause when it terminated the employment of these two officers, which the Board set forth at the end of the hearing on June 30, 2017.

In so concluding, we reject Jackson and Wheeler's argument that Caldwell v. Caddo Levee District, 554 So. 2d 1245 (La. App. 1st Cir. 1989), writ denied, 559

18

So. 2d 126 (La. 1990), is controlling and mandates that they may not be disciplined based on violations of law for which they have been previously acquitted. As discussed above, the City's burden of proof was to establish that legal cause existed for the disciplinary action by a preponderance of the evidence, Miller, 202 So. 3d at 1118, which clearly differs from the burden of proof required for a criminal conviction. See Sanders, 2018 WL 5792011, *6; See also, Bailey v. Department of Public Safety and Corrections, 2005-2474 (La. App. 1st Cir. 12/6/06), 951 So. 2d 234, 240 (where police officer appealed decision of the State Police Commission that affirmed the termination of his employment due to driving while intoxicated while he had been acquitted of the same charge; this court agreed with the Commission's finding that an acquittal on a criminal charge does not preclude a civil service disciplinary action based on the same set of facts, as the burden of proof differs between the two proceedings), and Fulton v. Department of Police, 2017-0523 (La. App. 4th Cir. 12/6/17), 234 So. 3d 107, 111, writ denied, 2018-0016 (La. 2/23/18), 237 So. 3d 515 (where police officer appealed decision of the New Orleans Civil Service Commission that affirmed his discharge resulting from a second degree battery charge for which he was found not guilty; court agreed with the Commission that the burden of proof was a preponderance of evidence, not that required for a criminal conviction).

We disagree with the contention that the terminations could not be based on legal cause because the officers were found not guilty of the charge of abuse of power. Instead, we find that the appointing authority proved by a preponderance of the evidence that the complained of action occurred and impaired the efficient operation of the public service.

## CONCLUSION

For the foregoing reasons, we convert the City's appeal to an application for supervisory writs and grant same, hereby reversing the district court's ruling, and

19

reinstating the decision of the Board in upholding the termination for cause of the employment of Emerson Jackson and Travis Wheeler. Costs of this writ are assessed against the Appellees, Emerson Jackson and Travis Wheeler.

**APPEAL CONVERTED TO APPLICATION FOR SUPERVISORY WRIT; WRIT GRANTED; DISTRICT COURT JUDGMENT REVERSED; BOARD DECISION REINSTATED.**